## THE PROGRESSO.[1]

### COFFIN v. THE PROGRESSO OR WELLS CITY.

*(District Court, E. D. New York. May 21, 1891.)*

ADMIRALTY JURISDICTION — SEAMAN'S WAGES — VESSEL WITHOUT NAME, REGISTER, OR DOCUMENTS.

A British vessel was sunk in the harbor of New York, and abandoned by her owners, and her register closed. She was raised and sold to American citizens, and, while without name or register or documents as a vessel, libelant was employed by her owner as mate. The owner claimed that he was to have been mate when the vessel was ready for sea. In the mean time he served about the wreck as it was being repaired. He was discharged before the vessel was documented, and before she went to sea. On suit brought *in rem* to recover his wages, it was contended that the wreck was not a vessel, in the sense that she could have officers or mariners, that the services were not maritime, and the court had no jurisdiction. *Held*, that the case was within the admiralty and maritime jurisdiction of the United States, and libelant was entitled to recover mate's wages.

In Admiralty. Suit to recover seaman's wages.

*James Parker*, for claimant.

*E. G. Benedict*, for libelant.

BENEDICT, J. This is an action *in rem* to enforce a lien for mate's wages against the steamer formerly known as the "Wells City," now known as the "Progresso." It is defended with the object, it is understood, of obtaining a decision upon a question of admiralty jurisdiction. The defense set up in the answer is that the steamer, while a British vessel registered under the name of "Wells City," was sunk in the harbor of New York, and was abandoned by her owner, and her register as a British vessel duly closed; that she was raised by the underwriters, and sold to the claimant, with the purpose to procure for her a register as a vessel of the United States, under the name "Progresso;" that at the time of hiring the libelant the vessel had no name or purpose as a vessel, and was not a vessel in the sense that she could have either officers or mariners, nor could either officers or mariners be shipped or hired as such on board of said hull; that when, on November 28th, the libelant was placed in charge of said hull, it was with the understanding that when said hull should be documented, and not until then, the libelant should be shipped as mate; wherefore it is denied that this is a cause of contract civil and maritime, or that it is a case within the admiralty and maritime jurisdiction of the United States. The proofs show that at the time of the rendition of the services in question the vessel was afloat in the Atlantic basin, undergoing repairs preparatory to a voyage to sea; that she had no American register, and was not in any way documented as an American vessel; and it is assumed, although not proved, that her British register had been closed. Up to the 25th day of November, one Captain McArthur was in charge of the ship, and was to go as first mate of the ship when she obtained her papers. On the 25th of November, McAr-

---

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

thur fell into the hold and was killed. On the 28th of November the libelant was employed by the owner of the ship in McArthur's place. Afterwards a master of the ship was appointed by the name of Faircloth, and under him the libelant served until December 17th, when, owing to a disagreement with Faircloth, the libelant's employment was terminated by mutual consent. Upon the evidence it is not open to the claimant to deny that the libelant served on board the ship in the capacity of mate; for in a written note dated December 17, 1887, the claimant said to the libelant, "You had better resign your position,"—a phrase that would not have been addressed to a mere ship-keeper; and this note was inclosed to the libelant in an envelope addressed: "Mr. Coffin, Chief Officer S. S. Progresso." Furthermore, on December 19th the owner of the ship gave to the libelant a certificate in the following terms:

"NEW YORK, December 19, 1887.

"This is to certify that Captain T. A. Coffin, who has been in our employ as chief officer of our S. S. Progresso, leaves our employ for reasons of his own. We have found him competent, reliable, and one who understands his profession. We commend him to any one needing his services.

"BELLONI & Co."

These facts compel a finding that services rendered by the libelant on board the vessel were rendered in pursuance of a contract for his services in the capacity of chief officer of the ship. Moreover, the character of the services rendered, so far as disclosed by the testimony, was such as pertains to an officer of a ship. The responsibility that attaches to an officer in charge of a ship was upon the libelant, and the compensation agreed on, as testified to by the claimant, was not the compensation of a mere ship-keeper. The contract under which the libelant served was therefore the ordinary maritime contract of hiring on board a ship or vessel, unless the law be as contended in behalf of the claimant, that the fact that the ship was at the time of the rendition of the services without a register, had no documents as a ship, and was without a name, deprived the services of any maritime character. I do not agree to this contention. The services contracted for and rendered were performed on board a ship, and in view of a contemplated voyage of the ship for the purpose of carning freight. The Progresso was no less a ship or vessel because she had no national character and was without a name. She could navigate, indeed had navigated, from the place where she was sunk to the Erie basin; she could be the subject of salvage services. Absence of national character or want of a name would not prevent her from navigating as a ship. She may not have been entitled to the rights and privileges of a vessel of the United States, but she was nevertheless a vessel, capable of being employed in commerce as a ship, and a subject of a maritime service. Such a service was rendered to her by the libelant, and by the maritime law a lien therefor attached to her. Upon the main question of the case, namely, that of jurisdiction, my opinion, therefore, is that the case is one within the admiralty and maritime jurisdiction of the United States. The evidence discloses a difference between the parties as to the rate of wages agreed to be paid the libelant. The libelant

claims for 21½ days, at the rate of $80 per month, and $1.50 per day for his board and lodging, there being no cook on board the vessel. The weight of the evidence, however, is that the agreement was that he should be paid at the rate paid the man that was killed, which was $70 per month, and 50 cents a day for meals. At this rate, and giving credit for $10 paid him, the amount due the libelant is $50.59. For this sum he is entitled to a decree, and, inasmuch as no tender is pleaded, he must also recover his costs, to be taxed.