THE MARION S. HARRIS.

SKINNER v. WINSMORE et al.

(Circuit Court of Appeals, Third Circuit. February 16, 1898.)

No. 17.

1. SALE OF A VESSEL—PAYMENT OF PURCHASE MONEY AND DELIVERY.

The sale, by a shipwright, of a vessel being repaired in his yards, is complete on the payment of the purchase money and the delivery of possession as far as it can be done, the vessel remaining in said yards, and the repairs continued in the name of the purchaser; no bill of sale or written instrument being necessary to transfer title to a vessel.

2. MARITIME LIENS—MATERIALS—CONTRACT FOR LIEN.

Where supplies for the equipment of a vessel are sold to the owner, who is known to be financially irresponsible, and are forwarded and delivered to the vessel at a port in another state under an express contract for a lien, the sellers are entitled to a lien.

3. SAME—BUSINESS FOR WHICH VESSEL IS INTENDED—MARITIME LIEN.

A contract for supplies for a completed ship intended to engage in navigation and commerce, though at the time not prepared to enter upon a voyage, and entitled to the rights and privileges of a vessel of the United States, is, in its nature, maritime, where the object and effect is to enable her to pursue her business upon the seas; and for supplies so furnished the seller is entitled to a lien on the vessel.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Thomas Evans, for appellant.

Curtis Tilton, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. This matter is brought before the court upon an appeal from a decree of the district court of the United States for the Eastern district of Pennsylvania dismissing the exceptions of the appellant to the report of a commissioner. It appears from the record that the bark Marion S. Harris was at one time a Norwegian vessel, known as the Linda. In 1893 she was abandoned at sea. In January, 1894, after having been towed into the port of Wilmington, N. C., she was, by authority of the owners and under-

writers, sold at public auction to Samuel W. Skinner, a shipwright of that city. The ship's papers were then returned to Norway, and she was without registry of any kind until after the passage of an act of congress approved January 16, 1895, which authorized and directed the commissioner of navigation to cause the foreign-built vessel Linda of Wilmington, N. C., to be registered as a vessel of the United States, when the deputy collector of customs, at Wilmington, on March 11, 1895, issued a certificate of enrollment reciting that Samuel W. Skinner had sworn that he was the sole owner of the vessel called the Marion S. Harris, formerly known as the Linda, and on the 16th March, 1895, issued a certificate of registry reciting that Philip B. Gardner, of Philadelphia, in the state of Pennsylvania, and William N. Harris, of Wilmington, in the state of North Carolina, were the only owners of the Marion S. Harris of Wilmington. Notwithstanding these recitals, it appears from the record that neither Harris nor Skinner had at this time any real ownership in the vessel Marion S. Harris. Under an agreement entered into between Gardner and Harris dated 30th November, 1894, Gardner was to convey to Harris one thirty-second interest in the vessel in consideration of his services to be rendered in obtaining for her an American registry, but it was expressly stipulated that the interest was to be nominal, that no earnings were to be given to Harris, nor was any liability of ownership to be borne by him. Neither was Skinner at that time the owner of the vessel, because in October, 1894, he had sold her to Gardner, as appears by the entries on his books and the receipts which he gave for the purchase price. So far as was possible, he made delivery of the vessel to Gardner, and Gardner, with Skinner's full knowledge, exercised all the rights of possession and ownership, employing and paying workmen in repairing and refitting the vessel, and purchasing sails and other necessaries. True, the bark remained in Skinner's shipyard, where the repairs were being made, but such repairs as were done by Skinner were charged to Gardner, the buyer, as to any other owner; the entries on Skinner's books showing that payments were made by him "by order of Captain Gardner." In our opinion, the sale was complete on the payment of the purchase money and the delivery of possession. "A bill of sale was not necessary to transfer the title of the vessel. After it was sold and delivered, the property was changed, and no written instrument was needed to give effect to the title." The Amelie, 6 Wall. 18–30. Gardner, the sole owner of the vessel, was a resident of the city of Philadelphia, in the state of Pennsylvania, which therefore became and was the home port of the vessel. The E. A. Barnard, 2 Fed. 712; The G. F. Brown, 34 Fed. 399; The Thomas Fletcher, 24 Fed. 377. That Gardner was a resident of Philadelphia was well known to the material men, the libelants in this case, as was also the fact of his personal irresponsibility. The supplies which were necessary to the proper equipment of the vessel were purchased by Gardner in Philadelphia, and forwarded and delivered to the vessel at Wilmington, N. C., by the several parties who furnished them. For materials supplied under these circumstances, the material man is entitled to a lien. The Lulu, 10 Wall. 192–204. In this case the libelants are protected by

an express agreement on the part of the owner that they should have a lien on the vessel for the supplies sold. In the case of The Kalorama, 10 Wall. 213, it is held that the owner can order repairs and supplies on the credit of the vessel; the learned judge who spoke for the court adding that "the case is free from difficulty if the owners are present, and the advances are made at their request, and under an agreement, express or implied, that the same are made on the credit of the vessel." It was insisted that the Marion S. Harris was not in any legal sense a ship; that, not being enrolled or possessed of a register, she could not lawfully engage in commerce, and was not, therefore, subject to a maritime lien. It may be true that at the time when the libelants furnished the supplies for which they claim their lien the Marion S. Harris was not prepared to enter upon a voyage, and was entitled to the rights and privileges of a vessel of the United States, but she was nevertheless a completed ship, intended to engage in navigation and commerce. It makes no difference whether the ship is unfit for sea, or even on the ways, at the time the contract is made; if the object and effect of it be to enable her to pursue her business upon the sea, it is in its nature maritime. The Hiram R. Dixon, 33 Fed. 297. Can it be questioned that the sails of Mair, or the ship chandlery supplies of Winsmore, or the galley furniture of Flick were all contracted for and furnished for the sole purpose of preparing the bark to engage in commerce upon the sea? The vessel was actually chartered when these materials were furnished, and performed the chartered voyage. Without them she would have been unable to do so. That the Marion S. Harris was without register, or enrollment, or license, or national character has no materiality. The maritime nature of the contracts will not be changed on that account. The Progresso, 46 Fed. 293. The true test whether a vessel is subject to the admiralty lien is the business for which she is adapted or susceptible of being used. The General Cass, Fed. Cas. No. 5,307. We concur in the view expressed by the learned judge below, that the claim of George Harris Son & Co. cannot properly be distinguished from those of the libelants Mair, Winsmore, and Flick, and that there is nothing in the case developed on the record which would estop them from enforcing the same. The mortgage of the appellant Skinner bears date the 12th day of March, 1895. In our opinion, there is a total want of proof sufficient to sustain a lien antecedent to the mortgage, based upon an alleged contract and retention of possession. The decree of the district court will be in all things affirmed.