THE GEORGE W. ELDER.†

(Circuit Court of Appeals, Ninth Circuit. July 7, 1913.)

No. 2,202.

1. ADMIRALTY (§ 6*)—JURISDICTION—"VESSEL"—EFFECT OF WRECK.

A steamship, engaged in commerce when she struck on a rock and was sunk, being so badly injured that she was abandoned to the underwriters and was not raised for nearly a year and a half, during which time

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 20, 1913.

her enrollment was surrendered, did not lose her identity as a "vessel," and remained subject to the admiralty jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 86–98; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 8, pp. 7297–7301.]

2. MARITIME LIENS (§ 60*)—OREGON STATUTE—DRY DOCK CHARGES.

B. & C. Comp. Or. § 5706, which provides that every boat or vessel used in navigating the waters of the state shall be subject to a lien for wharfage or anchorage, etc., gives a lien for charges for the use of a dry dock by a vessel while being repaired, which is enforceable in a court of admiralty.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 98; Dec. Dig. § 60.*

Maritime lien created by state laws, see note to The Electron, 21 C. C. A. 21.]

3. WHARVES (§ 16*)—PORT OF PORTLAND—RIGHT TO CHARGE FOR USE OF DRY DOCK.

B. & C. Comp. Or. § 4639, which authorizes the port of Portland to construct and maintain a dry dock, also gives it authority to charge a vessel for its use while being repaired.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 13–18; Dec. Dig. § 16.*]

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit in admiralty by the Port of Portland against the steamship George W. Elder; J. H. Peterson and C. P. Doe, claimants. Decree for libelant, and claimants appeal. Affirmed. For opinion below, see 196 Fed. 137.

Milton W. Smith, of Portland, Or., for appellants.
Wood, Montague & Hunt, of Portland, Or., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. On the 21st of January, 1905, the steamship George W. Elder, having her home port at Portland, Or., and while engaged in the coastwise trade between Portland and California points, struck a rock and sank in the Columbia river. After several unsuccessful attempts to raise her, the owners abandoned the vessel to the underwriters, who subsequently sold her to the claimant Peterson. On the 31st of December, 1905, her enrollment was surrendered. After Peterson's purchase, the claimant Doe acquired an interest with him in the ship. Further efforts to raise her were made, which proved successful on the 21st of May, 1906—about a year and four months after she had sunk. The vessel was then taken to the dry dock belonging to the libelant at St. John's, Or., and there docked May 29, 1906. From that time until the 18th of September, 1906, she remained on the dock undergoing repairs and alterations, which were intended to and did fit her to resume her business as a coastwise steamer plying the waters of the United States. When the vessel left the dry dock, and the libelant sought to collect its stated amount for dry dockage and incidental services, the claimants refused to pay a balance of $4,788,

to enforce which demand the libel was brought, and sustained by the court below.

The claimants have brought the case here by appeal, contending, first, that the court below was without jurisdiction; second, that the libelant is without power to charge vessels for dry dockage; third, that the charges made by the libelant, if legally made, are unreasonable; and, fourth, that the service rendered did not give the libelant any lien.

[1] Portland being the home port of the vessel, it is conceded that no lien exists under the general maritime law for the service rendered by the libelant; but if by the statute of the state a lien was given, then it does not admit of question that it was a maritime lien, enforceable in admiralty in the courts of the United States. The J. E. Rumbell, 148 U. S. 1, 11, 13 Sup. Ct. 498, 37 L. Ed. 345; The Glide, 167 U. S. 606, 624, 17 Sup. Ct. 930, 42 L. Ed. 296; The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73. It is insisted, however, on behalf of the appellants, that at the time the repairs were made and the services rendered "the alleged ship was not engaged in commerce or navigation—it was dead," says appellants' proctor, and should be considered as one that never had been so engaged. We do not think so. The fact that the vessel while on one of her voyages was so badly damaged as to make it impossible to raise her for nearly a year and a half does not alter the fact that she was engaged in commerce and navigation when her injury occurred, and while the record shows that the damage was very serious, resulting in bending her keel and breaking it in three places, and in breaking and bending her keel plates, and in other serious damage, her character as a vessel was in no wise affected. The efforts to raise her were for the purpose of repair and her restoration to the service in which she was engaged when injured. She had lost neither her hull, machinery, nor equipment. Her hull, it is true, had a hole stove in it, and she was otherwise badly damaged; but no better evidence of the fact that she was capable of repair and of restoration to navigation and commercial service could be had than the fact shown by the evidence that she was raised, towed to the dry dock, placed thereon, repaired, and thereupon resumed her business of plying the waters of the United States in the coastwise trade. The circumstance that in the accomplishment of all this much time was consumed is unimportant. It in no way changed the identity of the vessel, which all the time remained the same. True, while lying in the dry dock she was idle; but she was being made ready to resume her voyages. Her position was wholly different from that of a vessel purposely withdrawn from navigation, or laid up because her field of operation is for some reason closed. Hardy et al. v. Ruggles, Fed. Cas. No. 6,062; The Progresso (D. C.) 46 Fed. 292; The Marion S. Harris, 85 Fed. 798, 29 C. C. A. 428; The Cornelius Vanderbilt (D. C.) 86 Fed. 789; 26 Cyc. 764, and cases there cited.

[2] By section 5706 of Bellinger & Cotton's Annotated Codes and Statutes of Oregon it is provided, among other things, that:

"Every boat or vessel used in navigating the waters of this state or constructed in this state shall be liable and subject to a lien—

"1. For wages due to persons employed, for work done or services rendered on board of such boat or vessel;

"2. For all debts due to persons by virtue of a contract, expressed or implied, with the owners of a boat or vessel, or with the agents, contractors, or subcontractors of such owner, or any of them, or with any person having them employed to construct, repair, or launch such boat or vessel, on account of labor done or materials furnished by mechanics, tradesmen, or others in the building, repairing, fitting, and furnishing, or equipping such boat or vessel, or on account of stores and supplies furnished for the use thereof, or on account of launch ways constructed for the launching of such boat or vessel;

"3. For all sums due for wharfage, anchorage, or towage of such boat or vessel within this state;

"4. *   *   *"

## In Benedict's Admiralty (3d Ed.) 283, it is said:

"The pecuniary charge in the nature of rent to which vessels are liable for the use of a dock or wharf is called wharfage or dockage, and is the subject of admiralty jurisdiction."

It is not disputed that the use of a dry dock was essential to the making of the repairs necessary for the vessel in question, nor that the libelant furnished the dock so used, and rendered the incidental services charged for. We agree with the court below that the terms of the state statute are broad enough to embrace the service so rendered. That the maritime character of the contract here involved is not affected by the fact that the repairs were made in a dry dock was distinctly held by Supreme Court in the case of The Robert W. Parsons, supra.

[3] The power of the port of Portland to construct and operate a dry dock is conferred by section 4639 of Bellinger & Cotton's Annotated Codes and Statutes of Oregon, which reads as follows:

"The said the port of Portland shall have power to, in its discretion, acquire, own, and hold a site for, and to erect, hold, own, and operate a dry dock at and within the boundaries of the Portland [port] of Portland, on the Willamette river, on the terms and conditions following, that is to say:

"1. That the said dry dock shall be not less than of a sufficient size and capacity to accommodate vessels of four hundred feet in length;

"2. That the same shall be constructed of the style or pattern known as a floating dry dock; that is, so as to float, and rise and fall with the water in the river;

"3. That said dry dock shall be permanently located in or on a site to be secured therefor by purchase, lease, or gift, and which shall be so excavated as to allow of the dock floating therein, which site shall be on the boundaries of the port of Portland;

"4. That said dock shall be so located and constructed as that at extreme low water in the Willamette river the same shall admit vessels drawing twenty feet of water: Provided always, that nothing herein contained shall be so construed as to authorize the said the port of Portland to carry on the work of repairing, cleaning, or painting vessels, but that, under such rules, regulations, and charges as the said the port of Portland may make, and that said dock shall be at all times open to various mechanics of the city of Portland for the performing of such work."

The point of the appellant that the libelant was not authorized to charge for the service in question rests upon the contention that the meaning of the above-quoted section is that the dock is only for the use of mechanics having contracts to repair ships, and was not in-

tended for the use of any shipowner. We are of the opinion that the position is wholly untenable.

We further agree with the court below that upon the evidence in the case the libelant is not properly chargeable with the delay complained of by the claimants, or any part of it.

The judgment is affirmed.