CHARLES BOBZIN ET AL. v. THE GOULD BALANCE VALVE
COMPANY ET AL., Appellants.

**Corporations:** CONTRACTS WITH SUBSCRIBERS TO STOCK. A contract between a corporation and subscribers to stock, that in consideration for the purchase of stock it will locate and maintain its business at a particular place for an agreed time, is valid.

**Same.** Any agreement which may be legally performed by a corporation may be a condition of subscription for stock.

**Same:** PAROL EVIDENCE: VARIANCE OF WRITING. Where a stock subscription contract is silent as to the location of the corporation's plant, parol evidence is competent to show an agrement with subscribers, as a condition of their subscription, that the same should be located at a stated place for a given time; and is not objectionable as varying the terms of the contract.

Corporations: SUBSCRIPTION CONTRACTS: RATIFICATION.  A corporation may ratify even *ultra vires* acts so as to bind itself when it has received and retained the benefits of the act; so that a corporation existing when its promoters negotiated stock subscription contracts with the agreement that the plant should be located and maintained at a certain place for a given time, and it received and retained the proceeds of such sales with knowledge of the condition, there was a ratification of the agreement binding the corporation to performance.

Same: INJUNCTION: INVASION OF PLAINTIFF'S RIGHTS.  Where a corporation, in an action to restrain it from amending its articles to effect a change in its principal place of business in violation of an agreement, is insisting as a matter of defense upon its right to make the change, there is a sufficient threatened invasion of plaintiff's rights to warrant interference by a court of equity.

*Appeal from Jasper District Court.*—HON. BYRON W. PRESTON, Judge.

THURSDAY, OCTOBER 29, 1908.

REHEARING DENIED THURSDAY, JANUARY 21, 1909.

THIS action was brought to restrain the defendant company and its officers from amending its articles of incorporation changing its principal place of business from Kellogg, Iowa, to Des Moines, and from removing its office, shops, and factory from Kellogg.  An injunction was granted restraining the defendants from removing the plant from Kellogg within five years from and after February, 1906.  The defendants appeal.—*Affirmed.*

*Parker, Hewitt & Wright,* for appellants.

*McElroy & Cox* and *J. W. Burke,* for appellees.

SHERWIN, J.—The Gould Balance Valve Company is a corporation organized under the laws of Iowa, with

its principal place of business, shops and factory at Kellogg, Iowa. Its business is the manufacture and sale of the Gould balance valve, an invention of the defendant W. F. Gould, to whom a patent therefor was issued. After Gould had received his patent for the valve in question, he gave his codefendants Gunn and Meigs each a one-third interest in the invention, retaining the remaining one-third. During 1905 they operated as a copartnership and made and sold a few of the valves. The defendant S. B. Powers represented the partnership at the State Fair in Des Moines in 1905, and there exhibited the valve and took orders therefor. At that time Powers became interested in the merits of the valve, and suggested to some of the members of the partnership that it would be well to organize a corporation for handling the same, and said he would like some of the stock if a corporation was organized. Later he was informed by some member of the partnership that incorporation was contemplated, and in November, with a few of his fellow citizens of Kellogg, he visited the members of the partnership in Des Moines. At this meeting the members of the copartnership proposed to the Kellogg people that, if they would subscribe and pay for $10,000 of stock, they would incorporate for $45,000 and accept $15,000 of the stock for the patent and other property of the partnership located in the factory and principal place of business of the corporation at Kellogg. The Kellogg representatives at this meeting had no authority to make a definite contract, but it was understood that the proposition would be by them submitted to their home people and accepted if the requisite amount in subscription could be obtained. Soon thereafter W. F. Gould and W. R. Lane signed the articles of incorporation of the defendant company, and a certificate of incorporation was issued December 2, 1905. The necessary stock subscriptions were obtained in Kellogg, and on the 16th of December, 1905, a committee representing the sub-

scribers went to Des Moines, and there entered into a written agreement with Gunn, Meigs and Gould, whereby the latter agreed to assign to the Gould Balance Valve Company all rights, title and interest in patents owned by them on balance valves, and to take in consideration therefor $15,000 worth of stock, "said stock to be equally divided among" the three. The plaintiff and others who signed the agreement agreed to pay for $10,000 worth of stock within sixty days thereafter, and it was mutually agreed that the business of the corporation should be commenced not less than sixty days from said date. This contract was silent as to the place of business of the corporation. The written agreement was carried out, and the plant was located at Kellogg, notwithstanding the fact that the original articles of incorporation fixed its place of business in Des Moines. In November, 1906, the articles were amended, and Kellogg was named therein as the principal place of business. A special meeting of the stockholders of the corporation was called for October 7, 1907, for the purpose of submitting an amendment to the articles of incorporation changing its place of business to Des Moines.

One of the important fact questions in the case is whether it was agreed that the plant should remain at Kellogg for a term of not less than five years. That such was the agreement on the part of the defendants at the first meeting in Des Moines is pretty well established by the evidence. The appellants concede that it was agreed then, and at the second meeting, that the plant should be located at Kellogg, but deny that it was to remain there any definite or fixed time; but a careful consideration of the entire evidence, in connection with the admitted fact that the plant was to be located at Kellogg, has satisfied us that the agreement was that it should remain there at least five years, and that the subscriptions were made and the stock paid for relying on such agreement. And this

conclusion is reached without regard to the question whether in soliciting stock subscriptions Mr. Powers was acting in behalf of the copartnership or for the people of Kellogg. The appellants pleaded the written agreement of December 16th, and alleged that it contained the entire contract finally entered into by the parties. This was denied by the plaintiffs, and it was alleged that there was a mistake in the writing, and a reformation thereof was asked. No relief of the kind was granted, however, and hence we need not further notice the appellants' citation of authority and argument on that question.

There can be no question as to the validity of the contract in question if made with the corporation. Nor do we think there can be a serious question as to the right

1. CORPORATIONS: contracts with subscribers to stock.

of the plaintiffs to enforce said contract. The purchase of the stock in accordance with the terms of the agreement between them would create a valid and irrevocable contract which should be enforced. *Des Moines Valley R. R. Co. v. Graff,* 27 Iowa, 99; *Goodpaster v. Porter,* 11 Iowa, 161. The location of an enterprise of this kind is generally of great importance to the stockholders, and it is quite as often the sole inducement for taking stock therein. The desire to advance the material prosperity of particular localities has prompted the investment of large sums of money in large and small corporations, and there should be no more hesitancy in enforcing that part of a contract which provides for the location at a certain place than in enforcing any other condition thereof. We can not, therefore, assent to the appellants' proposition that the location of the principal place of business and factory is wholly incidental and collateral to the main purpose of the corporation, and that it is a matter wholly within the discretion of the stockholders. After the plaintiffs and others had complied fully with their agreement to take $10,000 of the stock, the place of business of the corporation was changed in accord-

ance with the agreement, and this change was subsequently provided for in an amendment to the articles of incorporation, and it should not now be said that it was an immaterial part of the plaintiffs' consideration.

Corporations may contract with their stockholders, and such contracts will be enforced as others are. 1 Cook on Corporation (5th Ed.) section 11; 1 Purdy's Beach on Corporations, section 5. Any condition which may be legally performed by the corporation may be a condition of a subscription for stock. *Iowa & Minn. Ry. Co. v. Perkins,* 28 Iowa, 281; *Des Moines Valley R. R. Co. v. Graff, supra;* Clark & Marshall on Corporations, 1449. A condition subsequent is a valid consideration for a stock subscription; and, while it does not affect the subscriber's liability to take and pay for his stock, it gives him a right of action against the corporation for its failure to perform the condition. Purdy's Beach on Corporations, section 233; 9 Current Law, 773, and cases cited.

2. Same.

The testimony tending to show the parol agreement to locate the factory at Kellogg for a term of not less than five years was competent. The written contract of December 16th was silent on the subject, and the testimony in question did not vary its terms. *Sutton v. Webber,* 127 Iowa, 361; *Hinkley v. Pipe Line Co.,* 132 Iowa, 396; *Cemetery Ass'n v. Lakens,* 126 Iowa, 121.

3. Same: parol evidence: variance of writing.

It is also said that any contract for the maintenance of the office and factory at Kellogg for a specific term would at most be only a promoter's contract by Gould, Gunn and Meigs as individuals or copartners, and not a contract by the corporation. If the corporation had never ratified the agreement of the men named, there would be force in the appellants' contention. But it is well settled that a corporation may ratify even an *ultra vires* act so as to bind

4. Corporations: subscription contracts: ratification.

itself when it has received and retained benefits on account thereof. Here the corporation was in existence when the stock subscriptions were paid by the plaintiffs. The money was paid to, and was received and retained by, the corporation. Its officers were the same who had formerly constituted the partnership, and they had full knowledge of the agreement as to the location of the plant, and with their knowledge the corporation is charged. There was a ratification thereof by the corporation. *Athearn v. Ind. Dist.*, 33 Iowa, 105; *Johnson v. School Tp.*, 117 Iowa, 319; *Dubuque F. C. v. Dist.*, 13 Iowa, 555; Elliott on Private Corporations, section 60; Bigelow on Estoppel, section 446; 10 Cyc., 262, 1068, 1078; Page on Contracts, section 1003; *Rogers v. Land Co.*, 134 N. Y. 197 (32 N. E. 27). There is nothing in the action of the plaintiffs indicating that they intended a waiver of any rights under their original agreement when they purchased additional stock. On the contrary, the very fact of such purchase after the factory had in fact begun operations in Kellogg, and had been established there by the amendment to the articles of incorporation, indicates that the plaintiffs thought the location secure for at least the term agreed upon.

It is said an action of this nature will not lie, since no invasion of the plaintiffs' rights has been threatened; the proposed meeting being for the purpose only of submitting the question of a change of location to the stockholders. But the appellants are here, as they were in the district court, earnestly contending for their right to do the very act which the plaintiffs say they intended to do at the called meeting. This has been held sufficient to warrant the interference of a court of equity. 2 High on Injunctions, section 1137; *Selma Water Co. v. Selma* (C. C.) 154 Fed. 138; *Newton v. Board*, 26 Ohio St. 618.

5. SAME: injunction: invasion of plaintiff's rights.

The judgment of the trial court was fully warranted by the law and by the evidence, and it is *affirmed*.