WEATHERSBY v. TEXAS & OHIO LUMBER CO.†

(Court of Civil Appeals of Texas. Galveston. Feb. 8, 1912. Rehearing Denied March 7, 1912.)

1. CORPORATIONS (§ 448*) — PROMOTERS—CONTRACTS.

A corporation is not responsible for the acts nor bound by the contracts of its promoters, unless its charter so provides, or it expressly ratifies such acts or contracts after incorporation.

[Ed. Note.—For other cases, see Corporations, Cent.Dig. §§ 1709, 1789–1792; Dec.Dig. § 448.*]

2. CORPORATIONS (§ 410*)—OFFICERS — CONTRACTS OF PRESIDENT.

The president of a corporation is not authorized to make contracts binding on it, except as to matters in the ordinary course of business, and so a contract by the president of a lumber company for the purchase of an option on a large tract of timber land is not binding on the corporation; there being no showing that the purchase of timber lands was an ordinary transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1629–1632; Dec. Dig. § 410.*]

3. CORPORATIONS (§ 448*) — PROMOTERS' CONTRACTS—ASSUMPTION.

Where the promoters of a corporation agreed to pay a bonus for an option to purchase timber land, and the deed was made direct to the projected corporation, which paid the entire consideration therein made, there being no mention in the deed of the purchase of the option, the corporation did not assume the obligations of the promoter's contract; it not being charged with notice thereof.

[Ed. Note.—For other cases, see Corporations, Cent.Dig. §§ 1709, 1789–1792; Dec.Dig. § 448.*]

4. PRINCIPAL AND AGENT (§ 177*)—RATIFICATION—NOTICE OF AGENT'S ACTS.

A principal is not charged with notice of the unauthorized acts of its agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

5. CORPORATIONS (§ 448*)—CONTRACTS OF PROMOTERS—LIABILITY.

Timber land purchased by a corporation with knowledge of a contract made by its promoters, whereby they agreed to save the seller of an option thereon harmless from liability on

notes, is subject to a lien to secure the performance of the promoter's contract.

[Ed. Note.—For other cases, see Corporations, Cent.Dig. §§ 1709, 1789–1792; Dec.Dig. § 448.*]

Appeal from District Court, Jasper County; W. B. Powell, Judge.

Suit by H. D. Applegate and another against the Texas & Ohio Lumber Company. A receiver was appointed, and R. L. Weathersby intervened. From a decree denying his claim, the intervener appeals. Affirmed.

Crook, Lord & Lawhon, for appellant. W. W. Blake, for appellee.

PLEASANTS, C. J. In a suit brought by H. D. Applegate and L. J. Hays, stockholders of appellee Lumber Company, a corporation, a receiver for said company was appointed by the district court of Jasper county on May 7, 1908. Appellant intervened in this receivership proceeding, claiming an indebtedness against the defendant company of about $3,600. This claim was referred to J. D. Martin, master in chancery, theretofore appointed by the court to hear testimony and pass upon claims presented against the defendant company. After hearing the evidence, the master in chancery allowed the claim, and so reported to the court. Accompanying said report, there was a transcript of the pleadings of the parties and of all the evidence introduced upon the hearing. The defendant Lumber Company filed exceptions to this report, and upon the hearing of said exceptions they were sustained by the court below, and judgment rendered that the intervener take nothing by his suit. From this judgment, the intervener prosecutes this appeal.

The petition of the intervener alleges: "That he (R. L. Weathersby), together with W. W. Wilson, on or about April 25, 1906, held a contract with George N. Smalley of Boston, Mass., under the terms of which contract the said George N. Smalley had agreed to sell to the intervener, Weathersby, and the said W. W. Wilson 3,743 acres of land in Jasper county, Tex., and that on or about the said date of April 25, 1906, H. D. Applegate, acting for and in behalf of the Texas & Ohio Lumber Company, entered into a written contract with the intervener, intervener being represented in the transaction by John H. Kirby, under the terms of which contract the intervener agreed that the 3,743 acres of land might be sold by the said George N. Smalley to the said H. D. Applegate, for the use and benefit of the Texas & Ohio Lumber Company, instead of conveying the same to the intervener, R. L. Weathersby, and W. W. Wilson; that the consideration for the agreement of the said R. L. Weathersby and W. W. Wilson to waive their right to purchase said land and have the same conveyed to H. D. Applegate was the agreement on the part of said Applegate to purchase from the intervener,

R. L. Weathersby, 80 shares of the capital stock of the Jasper Lumber Company of the par value of $8,000, and further agreed, undertook, and bound himself to hold the intervener harmless by reason of being indorser on two promissory notes of $1,396.10 each, bearing date of August 17, 1905, executed by the Jasper Lumber Company, payable to W. W. Wilson, said notice providing for interest at the rate of 8 per cent. per annum from date and 10 per cent. attorney's fees, said notes being also indorsed by H.· D. Applegate; that, in pursuance to said contract, the said George N. Smalley did, on the 8th day of June, 1906, convey said land to H. D. Applegate, instead of the intervener, Weathersby, and the said W. W. Wilson; that the tract of land was a valuable tract of timber land, and that the Texas & Ohio Lumber Company was especially desirous of procuring same; that on September 18, 1906, the Texas & Ohio Lumber Company, acting by and through its president, A. P. Laughlin, executed and delivered to this intervener a certain instrument in writing, by the terms of which written instrument it was provided that the Texas & Ohio Lumber Company should carry out and perform the contract made between R. L. Weathersby, by and through his agent, John H. Kirby, with H. D. Applegate on April 25, 1906, and that said contract was made for the purpose of securing title to the said 3,743 acres of land; that said written instrument bound the Texas & Ohio Lumber Company to pay off and satisfy any judgment that might be recovered against intervener by reason of being indorser on the two promissory notes hereinbefore set forth; and that, in the event intervener should be compelled to pay off any judgment or judgments that might be recovered in said notes, he should have a lien on said tract of land; that the said H. D. Applegate had, in compliance with said contract, conveyed the title to the said 3,743 acres of land to the defendant, Texas &· Ohio Lumber Company."

Intervener further alleged that suits had been brought on said two notes, one in the district court of Jefferson county, Tex., and one in the district court of Harris county, Tex.; that in the suit in the district court of Jefferson county, Tex., judgment was recovered against the intervener for $1,750.62, with interest at 8 per cent. per annum from its date, to wit, May 17, 1907; that on June 10, 1907, there was recovered against him in the suit in Harris county the sum of $1,752.-34, with interest at the rate of 8 per cent. per annum from date, and that the said intervener had been compelled to pay off and satisfy said judgments.

The intervener alleged in the alternative that if it should be shown that H. D. Applegate was not authorized by the Texas & Ohio Lumber Company to enter into the contract of April 25, 1906, and that the said A. P. Laughlin was not authorized by the Texas

& Ohio Lumber Company to execute the contract of September 18, 1906, that the said Texas & Ohio Lumber Company was estopped from denying the want of such authority, for the reason that, by virtue of said contracts, the defendant company secured title to the said tract of land, which was a valuable right, and that it could not accept the benefits of such contract without accepting the burdens. Intervener prayed for judgment against the Texas & Ohio Lumber Company for the amount of the two judgments he was compelled to pay by reason of being indorser on said two notes, and for the foreclosure of his lien upon said land.

The receiver filed an answer to the intervention of R. L. Weathersby, in which he alleged that the contract of the Texas & Ohio Lumber Company, agreeing to hold the defendant, Weathersby, harmless on said notes, was without consideration; that the 3,743 acres of land was purchased by Applegate, and the deed was taken in his name as trustee for the Texas & Ohio Lumber Company; that the cash payment was made by promoters of the Texas & Ohio Lumber Company; that the contract to hold the intervener, Weathersby, harmless by reason of his having to pay off said notes was for the use and benefit of Applegate; that Applegate imposed said conditions upon the company for his own use and benefit; and that said contract was signed without the authority of the board of directors of the Texas & Ohio Lumber Company, and without any knowledge on their part of the conditions of such contract. The defendant, Texas & Ohio Lumber Company, filed a special answer, denying that it executed the contract of September 18, 1906, as alleged by intervener, and denied any contractual relationship between the intervener and the Texas & Ohio Lumber Company.

The following written instruments evidence the agreements upon which intervener bases his right to recover against the defendant corporation:

On April 25, 1906, H. D. Applegate and John H. Kirby entered into the following agreement:

"Know all men by these presents, that this agreement between Jno. H. Kirby, acting for and on behalf of R. L. Weathersby, and H. D. Applegate, acting for himself, witnesseth: Whereas, the said R. L. Weathersby is a stockholder in the Jasper County Lumber Company and is also an indorser upon the notes and obligation of said Jasper County Lumber Company; and whereas, said Weathersby, together with W. W. Wilson, have a contract for the purchase of certain lands from George N. Smalley, which lands are mentioned in a contract of this date between said George N. Smalley, acting through Jno. H. Kirby, and H. D. Applegate; and whereas, at the request of said H. D. Applegate, said R. L. Weathersby and W. W. Wilson have consented that the contract by which said Applegate becomes the purchaser of said lands shall be made directly with said Applegate; and whereas, the consideration moving to said R. L. Weathersby and said W. W. Wilson for their consent to the purchase of said lands by said Applegate was this contract: Now, therefore, the said H. D. Applegate hereby binds and obligates himself to purchase from said R. L. Weathersby eight thousand ($8,000.00) dollars par value of the stock of the Jasper Lumber Company and to pay thereof eight thousand ($8,000.00) dollars in cash, the said cash to be paid as soon as the purchase of said lands from George N. Smalley is consummated and the said Applegate receives a deed therefor; and the said Applegate further obligates himself to protect said R. L. Weathersby as an indorser or guarantor upon any of the promissory notes, accounts or obligations of the said Jasper Lumber Company, whether said Weathersby be the sole guarantor thereof or jointly liable with other guarantors or indorsers.

"It is further understood and agreed that the agreement under which said Applegate purchases said lands from the said Smalley this day executed between himself and Jno. H. Kirby as the agent of said Smalley shall not be binding upon said Smalley, unless this agreement and obligation of the said Applegate to so purchase said stock from said Weathersby and to so protect said Weathersby on said guaranties, indorsements, etc., shall be faithfully performed by said Applegate.

"Witness our hands at Houston, Texas, this April 25, A. D. 1906. [Signed] H. D. Applegate. Jno. H. Kirby, Agent."

On September 18, 1906, the Texas & Ohio Lumber Company and A. P. Laughlin and H. D. Applegate executed and delivered to R. L. Weathersby the following agreement:

"Whereas, by contract dated April 25, 1906, H. D. Applegate agreed to purchase from George N. Smalley, Boston, Mass., certain lands; and whereas, in pursuance of said contract, George N. Smalley did on the 8th day of June, A. D. 1906, convey to said Applegate said lands, same amounting to about 3,743 acres more or less, situated in Jasper county, Texas, as fully described in the deed of said Smalley of said date; and whereas, said Applegate has duly assigned said lands to A. P. Laughlin for account of the Texas & Ohio Lumber Company, a corporation organized under the laws of the state of Texas; and whereas, on the said 25th day of April, A. D. 1906, the said Applegate made with Jno. H. Kirby, acting for R. L. Weathersby, a certain contract to purchase of said Weathersby eighty (80) shares of stock in the Jasper Lumber Company at the par value thereof, to wit, eight thousand ($8,000.00) dollars and in addition thereto to protect said Weathersby upon certain indorsements therein mentioned; and whereas, the Texas & Ohio Lumber Company is desirous of hav-

ing delivered it the said deed from the said Smalley conveying said lands: Now, therefore, in consideration of the premises and in order that there may be no further delay in the delivery of said deed and in order that the said R. L. Weathersby may be fully protected in accordance with said agreement, dated April 25, 1906, the said Texas & Ohio Lumber Company and A. P. Laughlin and H. D. Applegate hereby jointly and severally agree:

"(1) That said note to said Heisig & Norvell and all interest due thereon and all attorney's fees accumulated thereon, if any, and so indorsed by said Weathersby, shall be immediately paid off and discharged and the said Weathersby relieved of all liability therefor; and in the event of the failure of the parties hereto to keep this agreement then the said Weathersby shall have a lien upon said aforesaid lands to protect him on such indorsement.

"(2) It is further jointly and severally agreed by said Texas & Ohio Lumber Company, A. P. Laughlin and H. D. Applegate that in the event judgment is rendered against said R. L. Weathersby as an indorser upon said two notes or either of them, payable to W. W. Wilson, as aforesaid, and dated Aug. 17, 1905, for the principal sum of $1,396.10 each or for any interest, attorney's fees or court costs in connection therewith, then we, the said parties named, hereby agree, obligate and bind ourselves to immediately pay off and discharge such judgment and to hold said Weathersby harmless thereon; and in the event of failure on our part to so pay said judgment and same is paid by said Weathersby then he shall have a lien upon said lands so conveyed by said Smalley to said Applegate to secure the said Weathersby against and upon said judgments and such payments as he may make thereon.

"Executed in triplicate originals at Houston, Texas, this 18th day of September, A. D. 1906. [Signed] T. & O. Lumber Co., by A. P. Laughlin, Pres. A. P. Laughlin. H. D. Applegate."

H. D. Applegate testified that on April 1, 1906, he met A. P. Laughlin at Houston in the office of Mr. McClellan, receiver of the Jasper Lumber Company; that Laughlin was looking for timber, and that witness talked to Laughlin about some options he held on timber in Jasper county; that Laughlin and J. R. Stone were from Ohio, and were down in Texas for the purpose of investing in timber lands, and had a timber man with them. They sent their timber man to Jasper county to look over the lands witness had an option on, and after he returned witness, Laughlin, and Stone agreed to get up a company to handle these lands. Witness was president of Jasper Lumber Company, which was in the hands of a receiver, and it was contemplated that the company to be formed would purchase the holdings of the Jasper Lumber Company at receiver's sale; that George N. Smalley owned a tract of timber land in the vicinity, and witness informed Laughlin that it could be bought for $100,000. Witness was informed by John H. Kirby that R. L. Weathersby and W. W. Wilson had a contract with George N. Smalley for the purchase of the tract containing 3,743 acres of land and witness reported this fact to A. P. Laughlin, and Laughlin told witness to go ahead and contract for the purchase of the land; that he went to John H. Kirby, who was representing George N. Smalley, and was also representing R. L. Weathersby, and entered into the contract of April 25, 1906, wherein Applegate bound himself to protect Weathersby on his liability as indorser of the notes of the Jasper Lumber Company, and which provided that Smalley should not be bound to convey the lands to Applegate, unless Applegate did protect Weathersby on said indorsements; that Weathersby would not relinquish his right to purchase the Smalley lands, unless Applegate would protect him against the Jasper Lumber Company obligations, and that the only way to get the Smalley lands was to make the contract of April 25, 1906; that witness was acting for A. P. Laughlin and that Laughlin was acting for the Texas & Ohio Lumber Company, to be formed. Applegate finally closed out a contract for the purchase of the Smalley land, and took the deed in his (Applegate's) name. This was done at the suggestion of A. P. Laughlin. The recited consideration in the deed was $100,000, of which amount $10,000 was paid in cash and the balance in notes. During most of the time witness was negotiating for the land, Laughlin was in Ohio; but witness wrote Laughlin a letter, informing him what was necessary to get the land. The appellee corporation was organized and chartered in June, 1906.

After the execution of the contract of September 18th, Kirby delivered the deed from Smalley to Applegate, and thereafter Applegate conveyed the property to the appellee. The deed from Smalley to Applegate was a warranty deed, and it does not appear from the evidence that either this or the deed from Applegate to the appellee contained any mention of the contracts, before set out, or any recital that would give notice to the appellee that there was any such incumbrance on the land. The $100,000 purchase price of the land was paid by appellee. A. P. Laughlin was elected president and H. D. Applegate vice president of appellee company in June, 1906, by the board of directors.

Laughlin was not authorized by the board of directors to execute the contract of September 18th, and the contract was never ratified by the board. Laughlin testified that he had no authority from the appellee corporation to execute said contract, and that he so told Kirby at the time he executed it.

Suits were brought on the two notes men-

tioned in the contract before set out, and judgments obtained against the intervener. One of these judgments is for the sum of $1,753.34, and the other for $1,750.62. Both judgments were paid by the intervener.

By his first assignment of error, the appellant complains of the ruling of the trial court, sustaining appellee's exceptions to the report of the master in chancery, and contends that upon the undisputed evidence judgment should have been rendered in favor of appellant. The proposition submitted under this assignment is as follows: "The undisputed evidence shows that H. D. Applegate, acting as a promoter of the Texas & Ohio Lumber Company, agreed to hold intervener, R. L. Weathersby, harmless by reason of the said Weathersby being an indorser on two notes executed by the Jasper Lumber Company, payable to the said W. W. Wilson, in consideration of the said intervener and W. W. Wilson securing a transfer of 3,743 acres of timber land from George N. Smalley to H. D. Applegate, for the use of the Texas & Ohio Lumber Company, thereafter to be incorporated, and that the Texas & Ohio Lumber Company, after it was incorporated, acting through its president, agreed to pay off any judgment that might be recovered against the said R. L. Weathersby by reason of being indorser on said notes, the said agreement being made for the purpose of securing title to said tract of land, and that, as a result of making said contract, the corporation did secure a transfer of said tract of land to it and retained the title to same. The Texas & Ohio Lumber Company could not accept the benefits of the said contracts without assuming the burdens."

The evidence being undisputed, the only question for our determination is whether the facts established by the evidence show liability on the part of appellee upon the contract of Applegate, who was one of the promoters of the corporation, and the subsequent contract of Laughlin, which he was not authorized to make on behalf of appellee.

[1] It is a well-established general rule that a corporation can only be held liable for its own acts done after it has a legal existence, and is not responsible for the acts nor bound by the contracts of its promoters done or entered into before incorporation, unless its charter so provides, or it expressly ratifies such acts or contracts after incorporation. In the case of Railway Co. v. Granger, 86 Tex. 353, 24 S. W. 796, 40 Am. St. Rep. 837, our Supreme Court says: "Upon the question as to the liability of a corporation growing out of contracts made on its behalf by its promoters, there is considerable diversity of opinion. But there are some propositions affecting this question upon which the authorities seem to be in substantial accord. A promoter, though he purport to act on behalf of the projected corporation, and not for himself, cannot be treated as agent, because the nominal principal is not then in existence; and hence, where there is nothing more than a contract by a promoter, in which he undertakes to bind the future corporation, it is generally conceded that it cannot be enforced." Under this rule, it is clear that appellee is not bound by the contract made by Applegate with the intervener to save him harmless from liability on the Wilson notes; there being no provision of the charter fixing such liability on the corporation, and no ratification of said contract by the corporation.

[2] We think it equally clear that appellee is not bound by the contract made by Laughlin, because the undisputed evidence shows that he was not authorized by the corporation to make such contract. The president of a private corporation is not, by virtue of his office, authorized to make contracts binding on the corporation, except in relation to matters arising in the usual or ordinary course of the business of the corporation. There is nothing in the evidence in this case to warrant the conclusion that the purchase of timber lands was an ordinary transaction arising in the usual course of business of the appellee corporation, and no such contention is made by the appellant.

[3] The equitable doctrine that one cannot secure and retain benefits under a contract and repudiate its obligations is not applicable here. The appellee corporation purchased and paid for the land all that it ever agreed to pay therefor. The deeds through which it obtained the title gave it no notice of any claim or lien on the land by virtue of the contracts of Applegate and Laughlin, and it had no notice otherwise of such claim.

[4] The general rule that charges a principal with knowledge of facts known to his agent cannot be invoked, when the fact with which the principal is to be charged is the unauthorized act or agreement of the agent, whose knowledge thereof is sought to be imputed to the principal. To hold a principal chargeable with notice of the unauthorized agreement of the agent, and in this way raise the issue of estoppel by ratification on the part of the principal, would in effect destroy the rule which relieves the principal from liability for the unauthorized act or agreement of his agent. Hurlbut v. Gainor, 45 Tex. Civ. App. 588, 103 S. W. 409.

[5] If appellee had known or was charged with knowledge of the fact, when it paid the purchase price of the property and took the deed therefor, that Applegate or Laughlin, as a part of the consideration for the surrender by appellant of his prior right to purchase the land, had agreed to protect the appellant from liability on the Wilson notes, the land would be subject to

a lien to secure the performance of such contract; but, having no notice of this contract at the time it obtained title, the land cannot be charged with such lien.

The second assignment of error only presents in a different form the same questions presented by the first assignment, and therefore requires no consideration. What we have said disposes of all the questions presented by the appellant for our determination.

It follows from the conclusions above stated that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.