MT. PLEASANT COAL COMPANY ET AL. *v.* WATTS.

[No. 12,421. Filed March 11, 1926. Rehearing denied May 21, 1926. Transfer denied June 12, 1930.]

502

*Henry W. Moore, Charles E. Henderson, Perry A. Douglass, Rawley & Baumunk* and *Corwin & Gillen,* for appellants.

*Donald Baker* and *Hays & Murphy,* for appellee.

NICHOLS, C. J.—Action by appellee against appellants to recover damages for a breach of a verbal contract entered into between him and the individual appellants, under which contract appellee agreed to assign a 30-year coal lease that he owned on lands in Vigo County to a corporation to be organized and formed by them.

It is averred in the complaint that under said contract said individual appellants, on or about September 1, 1922, promised and agreed with appellee that, if he would assign said lease, they would form a corporation with a capital stock of $25,000, issued and paid up, and would set aside and allot to appellee one-sixth of the capital stock of said corporation, and would issue to him, in consideration of the assignment of said lease, $2,000

of the capital stock of said corporation, and would advance to him a sufficient sum of money, without interest, for him to purchase the balance of his one-sixth interest in said corporation, on the condition that he should pay his said balance of said corporate stock out of the dividends accruing on all his stock, and by paying $2 per day out of his salary as mine boss and superintendent of the proposed mine to be opened and constructed. They and each of them further agreed, in consideration of such assignment of such lease to the proposed corporation, to employ appellee as mine boss and superintendent of said mine at $8 per day steady employment during the remainder of his natural life.

In consideration of such verbal contract, appellee, on September 9, 1922, assigned his coal lease to the Mt. Pleasant Coal Company, which lease was accepted by such company, and it constructed a mine on the land covered by the same, and has been operating thereunder ever since said assignment.

Appellant Mt. Pleasant Coal Company, through its duly authorized officers and directors, had knowledge, at the time of the assignment of said lease, of the contract that the individual appellants, as promoters, made with appellee to obtain the assignment of said lease, and appellant company thereby fully ratified, adopted and confirmed the promises and agreements of the individual appellants made to appellee prior to the incorporation of said company, and, by reason thereof, the corporation became jointly liable on said contract with the individual appellants.

All the appellants breached and violated said contract by refusing to issue to appellee any of the stock in the company and by refusing to advance appellee money to purchase such stock. Appellants, after said corporation was organized, and after the mine was fully completed, on January 13, 1923, in pursuance of said promise of life

employment, employed appellee as mine boss and super-intendent of said company, and, on March 13, 1923, dis-charged him as such mine boss and superintendent with-out any cause whatsoever.

There was a general denial by each of appellants and an affirmative paragraph by the coal company, in which two written contracts were set up, the first applying to the employment of appellee in superintending the sinking of the shaft and erecting the tipple of the mine of the company, and the second employing appellee as mine boss of the mine for the period of one month after it was completed. To the affirmative paragraph of answer, appellee filed a general denial and also an affirmative reply, in which he admitted the execution of the first contract, but alleged that the second contract was void by reason of the fact that he was induced to sign it without reading it because of fraud and false representations on the part of appellants' attorney and appellant Scott, at a time when a confidential relationship existed between appellee and said attorney, and appellee and said Scott. The reply further alleged that the second contract was obtained by said fraud in the furtherance of a conspiracy among all appellants to defraud appellee of the rights, benefits and consideration promised him under the terms of the verbal contract set forth in his complaint.

Appellants separately and severally demurred to the complaint, which demurrers were overruled. Appellant coal company also demurred to the second paragraph of reply, which demurrer was overruled.

There was a trial by jury, which resulted in a verdict against appellants for $10,000, on which, after appel-lants' motion for a new trial and their motion in arrest of judgment were each overruled, judgment was rendered, from which this appeal.

Appellee contends with apparent earnestness that the appeal should be dismissed because the judgment in the

trial court was against Eugenia R. Wilson, administratrix of the estate of George R. Wilson, deceased, while the assignment of errors names "Virginia" R. Wilson, administratrix of the estate of George R. Wilson, deceased, as one of the appellants. But the discrepancy was harmless. It is clearly the result of some inadvertence, and there is not even a suspicion with the court that the parties so named are not one and the same. We hold that the names are *idem sonans*.

Appellants say that the court erred in overruling each of their separate and several demurrers to the complaint, and argue that the alleged promises of the individual appellants to have the corporation, to be organized in the future, issue to appellee $2,000 worth of its capital stock, if ratified by the corporation as alleged, became the promise of the corporation, and the individual promisors were released from any and all obligation therein, citing, as Indiana authorities to sustain their contention, *Davis, etc., Mfg. Co.* v. *Hillsboro Creamery Co.* (1894), 10 Ind. App. 42, 37 N. E. 549; and *Davis, etc., Mfg. Co.* v. *Booth* (1894), 10 Ind. App. 364, 37 N. E. 818. But neither of these cases is in point. Each case holds only that, under the facts there stated, the corporation was not liable, while the first case holds that the individual subscribers were each liable to the extent of his subscription, and the second holds that a complaint based on a several contract that proceeds upon the theory of joint liability is insufficient on demurrer.

The rule that must control under the averments of the complaint herein is thus stated in 14 C. J. 269:

"Of course promoters of a corporation are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation, and although the corporation has been formed and has received the benefit of the

contract, and they are not discharged from liability by the subsequent adoption of the contract by the corporation when formed, unless there is a novation or other agreement to such effect."

This rule of law was quoted with approval by this court in *Hilgemeier* v. *Bower Mfg. Co.* (1923), 81 Ind. App. 191, 139 N. E. 631. As the rule is plainly stated in the face of the opinion, and as appellants' petition to transfer to the Supreme Court was denied, the law in harmony with such rule seems to be settled in this state. Had there been a novation, a different question would be presented. *Van Vlieden* v. *Welles* (1810), 6 Johns. (N. Y.) 85.

Appellants next contend that the alleged promise of the individual appellants to loan money to appellee, without interest, with which to pay for stock in the corporation to be organized in the future, and to be paid back at the rate of $2 per day from appellee's wages, was an individual promise which the corporation under its charter had no power to ratify as alleged, and that such act would be *ultra vires*, citing *Agar* v. *Pagin* (1906), 39 Ind. App. 567, 79 N. E. 379; and *Breinig* v. *Sparrow* (1907), 39 Ind. App. 455, 80 N. E. 37. The first authority cited concerns school corporations, and has little if any bearing on the question here involved. The second is an unfortunate citation by appellants, for it states the rule to be that if a corporation makes a contract which is merely *ultra vires* and not illegal, and others have thereby been induced to expend money, the corporation will be bound by its contract. Appellee cites this case as an authority to sustain his contention that appellants cannot escape liability on the ground that the contract was *ultra vires*, even if it were so. Other authorities recognizing the same rule are: *Bedford Belt R. Co.* v. *McDonald* (1897), 17 Ind. App. 492, 46 N. E. 1022, 60 Am. St. 172; *City of Valparaiso* v.

*Valparaiso Water Co.* (1903), 30 Ind. App. 316, 65 N. E. 1063; *Franklin Nat. Bank* v. *Whitehead* (1898), 149 Ind. 560, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. 302.

But it is argued that a corporation is not bound by a promoter's contract even though it receives the benefit thereof. It may be conceded that if the promoter's contract was not made primarily for the benefit of the corporation, and if the corporation does not adopt it or promise to perform it, there would be no liability on the part of the corporation to perform. But where, as here, the promoters of a corporation make a contract in the interest of the contemplated corporation, if such corporation when organized recognizes and adopts it, it then becomes the contract of the corporation. *Davis, etc., Mfg. Co.* v. *Hillsboro Creamery Co., supra.* As was said in *Smith* v. *Parker* (1897), 148 Ind. 127, 45 N. E. 770: "A corporation is not bound by such a contract, unless after its organization it adopts such contract. . . . The adoption of such agreement by the corporation after its formation may be implied by the acts or acquiescence of the corporation or its agents without any express acceptance. After a corporation knowingly receives the benefit of an engagement entered into by its promoters prior to its organization, it will usually not be permitted to deny that it agreed to assume the corresponding burdens." It will hardly be questioned that in this case the contract was primarily made for the benefit of the corporation, and that it knowingly received the benefits thereof.

This salutary rule of law is generally supported by the decisions of other courts.

*In re Ballou* (1914), 215 Fed. 810, involved an order against a corporation to issue $2,000 of its stock, and the court, speaking with reference thereto, says: "Prior to the incorporation of the corporate petitioner, the petitioners Lawson, Mason, and one Stallsworth, who were

its promoters and incorporators, entered into a contract with the bankrupt, whereby they agreed that if he would assist them in procuring from W. F. Hall a mine lease of certain coal lands in Harlan County in this district for the corporate petitioner, it would, after its incorporation and organization, give him $2,000 of its capital stock. Pursuant to this contract the bankrupt assisted those persons in procuring such a lease for them, and thereafter they caused the corporate petitioner to be incorporated and organized and assigned the lease to it. The referee found such to be the facts from the evidence before him." The contention was that the corporation was not bound by the contract of its promoters and incorporators, and the court said: "It is true that a corporation, nothing more appearing, is not bound by the contract of its promoters. But if a corporation after it is organized adopts such a contract, it is bound thereby and, if it accepts the benefits of the contract, it thereby adopts it."

In *Possell* v. *Smith* (1907), 39 Colo. 127, 88 Pac. 1064, appellee sought to recover from appellants the contract price for an air compresser that she claimed to have delivered to the promoters of an incorporate company of which they were directors, which contract, after its organization, the corporation ratified and adopted as its own. The appellants contended that such a contract could not be ratified unless the particular knowledge of all the material facts came to the directors at a regular meeting of the board. But the court said: "We do not so understand the law. If, as a matter of fact, a majority of the directors of the company individually have knowledge of all of the material facts and promise to pay the debt, or, with such knowledge, make use, and enjoy the benefits, of the thing bought, that is sufficient to make the company liable."

In *Mantle* v. *Jack Waite Mining Co.* (1913), 24 Idaho 613, 135 Pac. 854, it was held that where several parties

as promoters enter into a contract with the owner of mining property for the purchase of certain mining claims, and the promoters and the owner of the mine agree that a corporation will be formed by the promoters and stock will be issued with a cash capital, and that the owner of the mine will transfer the claims to the corporation after organized, and that the stock will be nonassessable until the promoters have paid 25 cents a share for the stock, and the owner accepts $33,000 worth of stock and deeds the property to the corporation, which accepts the conveyance and ratifies and affirms the contract and accepts the benefits and conditions of the acts and contract of the promoters, such contract is enforceable against the corporation.

In *Bobzin* v. *Gould Balance Valve Co.* (1908), 140 Iowa 744, 118 N. W. 40, it was held that, where the promoters of a corporation negotiated stock-subscription contracts subject to a condition subsequent requiring the corporation to maintain a certain location of its plant for five years, and the corporation officers received and retained the money on such subscriptions with knowledge of the condition, it was ratified by the corporation. It was also held that a corporation may ratify even an *ultra vires* act so as to bind itself when it has received and retained benefits on account thereof.

In *Lowe* v. *Connecticut, etc., R. Co.* (1864), 45 N. H. 370, 375, the corporation was held liable upon the principle that a corporation is in equity bound by the contracts of its projectors preliminary to its incorporation when it afterwards takes the benefits of such contracts. This case quotes from *Preston* v. *Liverpool, etc., R. Co.* (1851), 7 English Law and Equity 124, as follows: "Where the projectors of a company enter into contracts in behalf of a party not existing at the time of the contract, but to be called into existence afterward, then if the body for whom the projectors assumed to act does

come into existence, it can not take the benefit of the contract without performing that part of it which the projectors undertook that it should perform."

In *Chase* v. *Redfield Creamery Co.* (1900), 12 S. D. 529, 81 N. W. 951, where a corporation accepted the benefit of a promoter's agreement to pay plaintiff certain unpaid rent of the corporation's predecessors, if permitted to occupy plaintiff's building, and, on the corporation's coming into existence, the promoter was elected as president, and the company took possession of the building, it was charged with the president's knowledge respecting the agreement and bound thereby. This case also holds that the plaintiff could recover on an oral agreement to pay the unpaid rent of the corporation's predecessors as part of the consideration for occupying the building, notwithstanding a written contract which was offered in evidence as to the termination of the rent for a certain year, such written contract relating to an independent matter.

Other authorities are: *United German Silver Co.* v. *Bronson* (1917), 92 Conn. 266, 102 Atl. 647; *Maryland Apt. House Co.* v. *Glenn* (1908), 108 Md. 377, 70 Atl. 216; *Robbins* v. *Banger R., etc., Co.* (1905), 100 Me. 496, 62 Atl. 136, 1 L. R. A. (N. S.) 963; *Battelle* v. *Northwestern, etc., Co.* (1887), 37 Minn. 89, 33 N. W. 327; *Van Noy* v. *Central Union Fire Ins. Co.* (1913), 168 Mo. App. 287, 153 S. W. 1090; *Paxton Cattle Co.* v. *First Nat. Bank* (1887), 21 Nebr. 621, 33 N. W. 271, 59 Am. Rep. 852; *Moriarity* v. *Meyer* (1916), 21 N. M. 521, 157 Pac. 652, L. R. A. 1916E 1165; *Morgan* v. *Bon Bon Co.* (1917), 222 N. Y. 22, 118 N. E. 204; *Schreyer* v. *Turner Flouring Co.* (1896), 29 Ore. 1, 43 Pac. 719; *Weathersby* v. *Texas, etc., Lumber Co.* (1915), 107 Texas 474, 146 S. W. 243, 180 S. W. 735, 7 A. L. R. 1440; *Mulverhill* v. *Vicksburg R., etc., Co.* (1906), 88 Miss. 689, 40 So. 647.

Appellants' next contention is that the alleged promise of the individual appellants to have the corporation, to be

organized in the future, furnish to appellee lifetime employment as mine boss or mine superintendent, even if ratified by the corporation as alleged, was and is against public policy and void, citing to sustain the contention, *Cox* v. *Baltimore, etc., R. Co.* (1913), 180 Ind. 495, 103 N. E. 338, 50 L. R. A. (N. S.) 453. But, on this question, the authority is squarely against appellants' contention, it being there held that a contract by a railroad company with an injured employee to give him employment so long as he should live and prove a competent and worthy man, and, if discharged, he should receive his salary during life, unless discharged for neglect of duty or dissipation, sufficiently protected the public interest, and hence was not void as against public policy, that a forbearance to sue for injuries constituted a sufficient consideration for such agreement, that such a contract was not *ultra vires,* and that it was not within the Statute of Frauds because it was an oral contract. It need hardly be said that such conditions of continued employment as are expressed above are necessarily implied in all such contracts of life employment. The employee impliedly agrees to perform the duties required of him with ordinary and reasonable care, diligence and attention, the employer only undertakes to pay the employee so long as he performs his duties with such reasonable care and skill, and the employer may discharge the employee for just cause at any time without incurring liability therefor. The public interests are thereby protected, and such contracts so impliedly conditioned, are not against public policy.

Other authorities to the same effect are: *Pennsylvania R. Co.* v. *Doland* (1892), 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. 289; *Illinois Central R. Co.* v. *Fairchild* (1910), 48 Ind. App. 300, 91 N. E. 836; *American Car, etc., Co.* v. *Smock* (1910), 48 Ind. App. 359, 91 N. E. 719,

93 N. E. 78; *Carter* v. *Richart* (1916), 65 Ind. App. 255, 114 N. E. 110.

The assignment of a valuable coal lease, as in the present case, makes a consideration as efficacious as the agreements in the cases cited not to sue for injuries suffered, and for which the companies were held liable; and we may add that such assignment was a sufficient consideration for the obligation assumed by each of the individual appellants, as well as by appellant corporation, if for no other reason, because these individual appellants became the sole stockholders, directors and officers of the appellant coal company and thereby received the full benefit of such assignment.

Appellant coal company challenges the second paragraph of appellee's reply, to which the court overruled its separate demurrer, for the reason, as appears by its memorandum to its demurrer, that the reply sets up facts which are apparently designed to set aside a written contract and substitute therefor an oral contract, and bases its challenge upon the well-established rule of law that a parol contract cannot be pleaded in contravention of a subsequent written contract, nor in avoidance of its terms. But, as we understand the issues as presented, appellant coal company, by its second paragraph of answer, set up the two written contracts made subsequent to the alleged oral contract into which it claims that such oral contract, if any there was, was merged, while appellee, by his second paragraph of reply, avers that the first contract mentioned in the coal company's answer was entirely independent of the original oral contract, such first written contract being, as appears on its face, a contract for the sinking of a shaft, erecting a tipple, building a scale house and installing scales, an employment which was, as averred, entirely independent of appellee's employment for life

as mine boss and superintendent. As to the second contract set up in said second paragraph of answer, appellee avers in his second paragraph of reply that fiduciary and confidential relations existed between appellee and appellant Moore, who was the attorney for appellants, but acting as such for appellee, and appellant Scott, who was the secretary of appellant company, and that, while such relations existed, they each made fraudulent representations to appellee by which he was induced to sign said second contract, and that he did sign the same without reading it. We hold that the second paragraph of reply is a sufficient reply to appellant coal company's answer setting up the contracts, and that the demurrer thereto was properly overruled.

Under their motion for a new trial, appellants forcefully present that the verdict of the jury is not sustained by sufficient evidence. We have carefully examined the evidence as set out in appellant's brief, and have to say that, while we might not have reached the same conclusion as to its preponderance as the jury reached, there is evidence to sustain the verdict, and it is not for this court to weigh the same. It is altogether probable that the jury, in determining the preponderance of evidence, considered the circumstance that, at the beginning of the negotiations between appellee and appellants, appellee had a valuable coal lease on 80 acres of land, and that, when he was discharged, appellants had the lease, and he had received nothing therefor except compensation for services which he had theretofore rendered for the company. The verdict cannot be disturbed for insufficiency of the evidence.

Appellants further present error of the court in admitting certain evidence over the objection of appellants; but the questions and objections thereto do not appear in appellants' statement of the record, and are found only in appellants' motion for a

new trial. This is not sufficient to present any question for our consideration. *Gwinn* v. *Hobbs* (1917), 72 Ind. App. 439, 118 N. E. 155; *Continental Nat. Bank* v. *McClure* (1916), 60 Ind. App. 553, 111 N. E. 191; *Gregg* v. *Gregg* (1905), 37 Ind. App. 210, 75 N. E. 674.

There is a reference to evidence to which objection was made in the statement of the record pertaining to the value of the lease, the condition and market value of the mine, including good will, and the number of tons of coal in each acre, but the statement of the record is not sufficient to present any question. Had it been, such evidence was entirely proper as a basis upon which to estimate the damages suffered by appellee. We do not consider the question, however, for the reason that it is not properly raised.

Appellee tendered 27 instructions to be given to the jury, of which the court gave 13; appellants tendered 38, of which the court gave 29; the court gave nine instructions on its own motion. We have examined each of these instructions, as well as appellants' respective objections thereto and answers to such objections by appellee, and we hold that the jury was well instructed as to the law of the case, and that there was no reversible error in instructing the jury.

Judgment affirmed.

Enloe, P. J., and McMahan, J., dissent.