# THE MARYLAND APARTMENT HOUSE CO. *vs.* JOHN GLENN.

*Liability of Corporation on Contract Made by Promoter for Its Benefit.*

When the promoters or projectors of a corporation about to be formed, make a contract on its behalf, the benefits of which are accepted by the corporation after its formation, such contract is enforceable against the corporation.

The promoter of a corporation employed the plaintiff to procure a loan on the property of the future corporation, promising to pay him a certain compensation for such services. After its formation the corporation accepted the loan so procured and executed a mortgage to pay the same. *Held*, that the plaintiff is entitled to recover from the corporation, in an action at law, a reasonable compensation for his services, not exceeding the sum mentioned in his agreement with the promoters.

*Decided June 25th, 1908.*

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*W. H. DeC. Wright* and *J. Walter Lord*, for the appellant.

The bare fact stands thus—that the appellee procured the loan and it was accepted by the appellant which had employed the Brandts to procure it.   At the time of its acceptance and up to and after the date when the mortgage was executed and recorded, and even after the date (June 1st) when the first instalment under the mortgage was paid, the evidence is conflicting as to whether or not, the claim of the appellee for commissions had been made known to the appellant.   The most that is established by uncontradicted evidence is that some of the directors knew Glenn had been instrumental in obtaining the mortgage, and one of them (Jacob Brandt) knew that he expected the appellant to pay him.   Even this last is not clear.   Four of the incorporators and directors of the appellant state that their understanding was, the appellee was assisting the Brandts as their agent, and was looking entirely to them for his compensation.

All of the appellant's prayers, based on the theory that a corporation can not be bound by contracts made prior to its formation by promotors, unless ratified or adopted by the corporation subsequently, were rejected.

In order for the proposition, contained in the granted instruction, to have any possible application to the facts, it must be conceded that when the services were rendered, the appellant was actually in existence, otherwise the case could clearly be based only on the theory of a possible adoption by the appellant after its formation of the contract made on its behalf by its promoter.

In other words, it must be conceded that not until the mortgage was actually executed, or perhaps until the instalments under the mortgage were paid, could the appellee as a real estate agent be regarded as having rendered his services.

If we make this assumption and consider the services as having been rendered subsequently to the appellant's formation, then we have a plain case of a principal who has employed an agent to perform certain services; the agent employs a sub-agent to assist him.   Can the sub-agent recover

for his services from the principal who has enjoyed the benefit of the sub-agent's services?

The granted instruction announces the proposition that when a principal employs an agent to perform certain services, and the agent employs a sub-agent to assist him, then the sub-agent may recover under the common counts for his services from the principal without showing anything more than that the principal enjoyed the benefit of the sub-agent's services. This we submit is erroneous. The situation has been brought before the Courts repeatedly. If the agent having undertaken to transact the business of his principal, employs a sub-agent on his own account to assist him in what he has undertaken to do, he does so at his own risk and there is no privity between such sub-agent and principal. *Mechem Agency*, sec. 197; *Story on Agency*, sec. 386; *Homan* v. *Brooklyn Life Ins. Co.*, 7 Mo. App. 25; *Fudge* v. *Leckner Contracting Co.*, 80 Ill. App. 35; *Hill* v. *Morris*, 15 Mo. App. 330; *Corbett* v. *Schumacker*, 83 Ill. 404; *Cleaver* v. *Stockwell*, 33 Me. 341.

The mere fact of the services having been rendered even with the knowledge of the principal is not of itself sufficient to imply a promise by the principal to pay, when the services were ordered not by the principal but by an agent who was employed by the principal at a stipulated compensation. This precise point is decided in *Homan* v. *Brooklyn Life Insurance Co.*, *supra.*

While cases may frequently have arisen wherein sub-agents have been held entitled to recover compensation from the principal, yet in all such there have been circumstances from which it could be inferred that the principal expected to pay the sub-agent, and that the sub-agent expected to receive payment from the principal. In the case at bar, in view of all the evidence offered in regard to the organization of the appellant corporation, we submit that it was at least an open question whether or not such privity existed, and the instruction granted by the Court should have expressed this alternative possibility. It should have required the Court as a jury to find from all the circumstances that the appellant contemplated

some liability to the appellee for his services when they were accepted.    If the Court had accepted this proposition as a part of the law of the case, it could hardly have found the verdict which it did.    Many potent circumstances disproved any such hypothesis.

The principle laid down in *Boston Ice Company* v. *Potter*, 123 Mass. 28, is quite pertinent to the present inquiry.

The appellee in the case at bar failed to inform the appellant of his claim until long after the meeting of April 6th (which the appellee does not deny) and after that meeting it was too late for the appellant to have rescinded its contract for the loan, upon becoming aware of the appellee's connection with it.    Upon this principle the case should be determined.

If the appellant upon receiving notice of the appellee's claim, had been free to reject the loan secured by him, and yet had decided to accept it, then there might be some basis for the claim.    But there is no evidence of such notice until long after the appellant had solemnly accepted the loan and become bound to pay the commission to the mortgagee and had entered into its contract to pay the Brandts for their services, which last it was generally understood, included the service rendered by the appellee.

In granting the above instruction, the Court indicated in its verbal opinion some such line of reasoning as follows: The appellee's services were not completely rendered until after the appellant's incorporation.    By the rule laid down in *Riggs* v. *Turnbull*, 105 Md. 135, it was held that a real estate agent is not entitled to his commission in making a sale, until the purchaser has actually paid over the purchase money.    Therefore, the Court reasoned, that not until the mortgage was executed and perhaps until the successive instalments under it were paid, could it be considered that the appellee had completed his services.

At the time of this final consummation of his efforts, the appellant was in existence of course, and accepted the services. Therefore, it was reasoned, the appellee could sue under the common counts for work and labor done.    The argument we

have presented above in regard to the principal's liability to a sub-agent, it will be observed concedes all this, and abandons for the time the theory of promoters and their contracts.

It ignores altogether the relation of promoter to the appellant and treats the case as if the appellant had been in existence and capable of contracting even when the appellee first began his operations.

If the Court below had included in its theory of the law governing the case, the idea that privity of contract between the appellee and the appellant, was essential to the appellee's recovery, we submit that the evidence would have precluded such a verdict as was found.

The appellant presented four prayers based on the proposition that a corporation can not be bound by promoter's contracts made on its behalf prior to its formation unless it shall have adopted or ratified the contracts after its formation with full knowledge of the facts. This, we submit, is the rule which naturally occurs to us in considering the facts of the case, and to apply any other can only be done by an undue stretch of the imagination.

That the above rule is correct as an abstract proposition of law can not now be questioned. *Alger on Promoters*, sec. 206, 223; *Cook on Corporations*, sec. 707; 23 *Amer. & Eng. Ency.*, p. 242, *et seq.*; *Tift* v. *Quaker City Bank*, 141 Pa. St. 550.

While it is true that a promoter's contract which has been ratified or adopted by the corporation or the benefits of which have been accepted by the corporation *with knowledge of the facts*, may be enforced against it; 2 *Cook on Corporations*, sec. 707, it is equally clear that the acceptance of the benefit *in ignorance of the facts* carries with it no such consequence. In any case whether the various acts and circumstances attending the transaction have amounted to ratification or adoption is a question for the jury. *Oakes* v. *Cattaraugus Water Co.*, 143 N. Y. 430, 437.

That there can be no ratification unless there be a freedom of action to ratify or to reject is also indisputable.

If the lower Court had applied this rule it could then have

taken into consideration all the circumstances in order to de-
termine whether or not there had been any ratification of the
appellee's employment by the appellant after its formation.
The circumstance that the instalments under the mortgage,
or some of them were accepted by the appellant after it had
notice of the appellee's claim, together with all the other cir-
cumstances above set forth could have been considered by the
Court in determining the question of fact as to ratification.

Again admitting for the argument's sake that in conse-
quence of the rulings in *Riggs* v. *Turnbull*, the appellee's ser-
vices must be considered as having continued until the mort-
gage was made or until the instalments were all paid over, the
case is no different from numbers of others which have turned
on the question of ratification of promoters' contracts.

In *Ry. Co.* v. *Granger,* 86 Tex. 350, the services continued
after the corporation's formation, yet the Court held for
reasons precisely the same as we urge in the case at bar, that
there had been no ratification of an agreement made by one of
the promoters to pay a commission.   To this case we ask the
Court's special attention as it is excellently reasoned, and
presents facts closely resembling the case at bar.

*John Prentiss Poe* and *Edgar Allan Poe*, for the appellee.

The instruction of the Court proceeds on the theory that
the appellant was liable to the appellee for services rendered
by him to it and accepted by it under his employment by M.
& J. Brandt who were the promoters of the enterprise and as
such represented the corporators and the corporation which
these corporators subsequently formed, and that the appellant
having accepted, retained and enjoyed the fruit of the appel-
lee's services must be held to have thereby promised to pay
him what such services were fairly and reasonably worth, and
that the refusal of the appellant after its incorporation to pay
him could not nullify this promise and enable it to escape pay-
ment of what was strictly due to the appellee.   The four
prayers offered on behalf of the appellant and rejected by the
Court presented the converse of this proposition.

M. & J. Brandt, representing the interested parties, employed the appellee to raise the needed money.   He accepted the employment with the distinct understanding that he was to be paid for his services.   He procured the money, the mortgage was authorized to be executed by the corporation after its incorporation ; the corporation being in fact made up of the same parties for whom M. & J. Brandt were acting. Hence it ought to be plain that from these circumstances it was not competent for them as directors to repudiate what they and their authorized agent had done for them as proposed incorporators and directors and thus to get rid of the obligation of the appellant to pay the appellee by simply refusing to recognize his claim and by remitting him to an action against their authorized agents and representatives.   Certainly he is entitled to be paid by somebody, and the basis of his claim against the appellant is that it cannot enjoy the fruits of his labors without paying him what those labors were fairly worth.

The prayer granted by the Court correctly stated the law as applicable to the facts of the case, being directly in line with the decision of this Court in *Grape Sugar Company* v. *Small*, 40 Md. 395.

The appellant attempts to escape from its equitable obligation to the appellee on the plea that the services performed by him were a part of the services to be rendered by Brandt, the promoter, and that the latter's compensation had been the subject of express agreement, and that, moreover, the mortgagee had charged such an excessive bonus in addition to the rate of interest on the loan that any additional expense in connection therewith, would be unreasonable and unwarrantable.

In so far as the defense of unreasonableness is concerned, that was fairly submitted to the Court, sitting as a jury, under the prayer granted.   Again, if by virtue of the high charge made by the mortgagee for the loan, nothing more should be collected from the appellant for securing it, how can the appellant claim that the services charged for by the appellee were included in the stipulated compensation to Brandt ?

Manifestly, if there was nothing due to anyone, in view of

what was paid to the mortgagee for the loan, the claim cannot be said to be included in Brandt's stipulated compensation, because, if Glenn rendered substantially no service for which payment should be made, of course, Brandt did not either, and hence could properly make no charge therefor.

Appellant's first prayer asked the Court to rule that there was no evidence that the agreement made with the appellee by M. and J. Brandt was adopted or ratified by the appellant. The complete answer to this proposition is that the acceptance by the appellant of the benefits and fruits of the labor and services of the appellee is evidence of the adoption of the agreement. Adoption can be shown either by express assent or by implied assent, and the assent is implied when the benefits of the contract are accepted. Indeed, in such a case an equitable estoppel to deny adoption arises. It was on this principle that the Court decided the case of the *Grape Sugar Company* v. *Small*, 40 Md. 395, *supra*.

Appellant's second prayer asked the Court in effect to rule that there must be an express adoption by the corporation, when afterwards formed, of the contract made on its behalf by the promotor with a third party, before the third party can hold the corporation liable, even though the corporation, when formed, accepts the benefits of the contract.

It is submitted that no authority can be found that goes to such length. All the text book writers and authorities agree that express adoption is not necessary, but that adoption by implication is just as binding as adoption by express resolution of the proper authorities. If the Court found the facts set out in the first five paragraphs of the appellant's second prayer, the Court would be bound under all the adjudicated cases to find a verdict for the appellee. The last paragraph, therefore, of said prayer compelling the Court sitting as a jury to find the additional facts therein stated makes the prayer bad, and it was therefore properly rejected.

BRISCOE, J., delivered the opinion of the Court.

This is an action of *assumpsit* upon the common counts for

work and labor done, in a suit brought in the Court of Common Pleas of Baltimore City, by the appellee against the appellant company, to recover a commission for obtaining a loan for it of $70,000 from the Title Trust and Guarantee Company of Baltimore. There is filed with the declaration a bill of particulars showing the nature of the plaintiff's demand, and it is as follows:

1903 and 1904

To this amount payable by the defendant to the plaintiff for work and labor done by the plaintiff for the defendant at the instance and request of M. and J. Brandt, its agents and representatives, in securing a loan of $70,000 for the defendant on its mortgage $1,750.00—with interest until paid.

The defendant pleaded never indebted and never promised as alleged.

The case was tried before the Court, sitting as a jury, and from a judgment in favor of the plaintiff, the defendant has appealed.

The questions brought here for our consideration are presented upon two bills of exception, one to the refusal of the Court to admit certain testimony offered upon the part of the defendant, and the other to the ruling of the Court in granting the plaintiff's prayer, as modified, and in rejecting all of the defendant's prayers.

The prayers it will be observed make no reference to the pleadings but were granted upon the evidence and facts in the case, so we are confined to the evidence to which they refer and are precluded from considering the state of the pleadings. The rule is well settled, that suitors must recover according to the *allegata* and *probata*. *Stockton* v. *Frye*, 4 Gill 406; *Giles* v. *Fauntleroy*, 13 Md. 126; *Fletcher* v. *Dixon*, 107 Md. 420.

There was no error, we think, in sustaining the objection to the testimony set out in the first bill of exception. The testimony sought to be introduced appears to have been irrelevant and immaterial to the issue between the parties, but its rejection could not have injured the defendant's case because the defendant company had the benefit of the fact, in the tes-

timony of the witness Glidden, who testified on cross-examination that the Brandts have not been paid at all but that they do hold some stock in the corporation which they obtained from George H. Thomas as a commission for securing the contract for the construction of the apartment house for the said Thomas.

The vital questions in the case arise upon the prayers, and it will be necessary to state somewhat in detail the facts disclosed by the record, in order to have a clear understanding of their application.

The Court granted the plaintiff's prayer, with a certain modification, which will hereafter be set out, but rejected the four prayers offered by the defendant.

It will be seen that the defendant's prayers presented the converse of the proposition contained in the plaintiff's prayer as granted, and a consideration of one will practically dispose of the others.

The facts, upon which the instructions were asked, appear to be these:

The appellant company was incorporated under the General Incorporation Laws of the State on the 19th of March, 1903, and subsequently, on March 31st, 1903, its certificate of incorporation was amended by increasing its capital stock to two hundred thousand dollars. The incorporators were Messrs. Jacob Brandt, John Henry Keene, John Glenn, Jr., Henry S. King, George H. Thomas, Edward H. Glidden, of Baltimore City, and John H. Wight, of Baltimore County. The corporation was to be managed by seven directors and the incorporators were named as such for the first year.

The object for which it was formed is stated to be for the purpose of buying, selling, mortgaging and leasing or otherwise dealing in lands, or other property, and also for the purpose of carrying on in the city of Baltimore the industrial business of conducting an apartment house in all its branches.

The firm of M. & J. Brandt, of Baltimore, were among the promoters of the organization and according to the evidence, the firm was authorized to negotiate a loan of $70,000 on the

bonds of the appellant company, to be incorporated.   Mr. Glidden was employed as the architect to build the apartment house on a lot to be purchased from Messrs. Keene and Wight, provided the matter could be financed.

On the 13th of February, 1903, Messrs. Brandt, who were promoting the plan, entered into negotiations with the appellee to secure a loan of $70,000 from the Title Guarantee and Trust Company.   This was subsequently effected by the appellee with the Trust Company and the loan was secured by a duly executed mortgage, dated the 8th of May, 1903.   The contract between the appellant and the appellee is evidenced by the following letter.

"Baltimore, Maryland, March 6, 1903.
John Glenn, Jr., Esq.,

Dear Sir: We enclose herewith letter to the Title Guarantee and Trust Company making application for a loan of $70,000 on the new apartment house to be erected on the lot at the northeast corner of St. Paul and Preston streets.

Will you be kind enough to hand this to Mr. Miller and have company to take action?

We agree to pay you a commission of two and one-half per cent. on the amount of the loan secured.   This payment to be made as money on $70,000 loan, is paid over to the company.

Yours very truly,
M. & J. Brandt,
Promoters."

It is admitted that the money as secured by the appellee was accepted by the appellant company and was used in the construction of the apartment house; that it was paid according to the terms of the mortgage, and was obtained through the services of the appellee, and that no commissions have been paid him or to M. & J. Brandt, on account of the services rendered.

There is evidence tending to show that all of the directors except one or two knew of the employment of the appellee to negotiate the loan and that all of them knew it before the first of June, when the first instalment upon the mortgage became due.   It also appears that at a meeting of the board of direc-

tors held on the 6th of April, 1903, the matter of the loan was discussed and the following resolution was passed.

"Whereas it is necessary to the fulfillment of the purpose of the company to obtain a loan of not less than $70,000, and therefore, it is to its interest to adopt the agreement made in its behalf by M. & J. Brandt with the Title Guarantee and Trust Company in reference to the loan. Now, therefore, be it resolved, That the Board of Directors be and they are hereby authorized to accept and adopt for the Company, the agreement entered into on its behalf by M. & J. Brandt and the Title Guarantee and Trust Company."

The agreement here referred to appears from a letter from M. & J. Brandt to the Title Company dated the 6th of March, 1903, and from the latter to the former dated the 12th of March, 1903, set out in the record. And on March 12th, 1903, the appellee received the following letter from M. & J. Brandt, in acknowledgment of his connection with the negotiations with the Title and Trust Company.

March 12, 1903.

John Glenn, Jr., Esq.,

Dear Mr. Glenn: We are in receipt of your letter of March 12, 1903, enclosing letter of the Title Guarantee and Trust Company accepting our proposition in our letter of March 6, 1903.

Yours truly,

(Signed.)                                        M. & J. Brandt

Promoters.

These are the prominent and material facts in the case and are the basis for the rulings of the Court upon the prayers.

The plaintiff's prayer, as modified, we think, correctly presented the law of the case. It is as follows:

If the Court shall find from the evidence that M. & J. Brandt, acting as promoters for parties who afterwards became the incorporators of the defendant undertook to procure for it a loan of $70,000, or thereabouts upon a mortgage of its apartment house and ground, upon which the same was to be erected, and that said M. & J. Brandt in the performance of their said undertaking as such promoters engaged the plaintiff to procure the said loan for the use and benefit of the defendant, and that the plaintiff accepted such employment and did procure for the defendant the said loan under such em-

ployment, and that the defendant accepted and received the same and applied it to the construction of said apartment house; and if the Court shall further find that the defendant has never paid any compensation whatever to the plaintiff, and that said M. & J. Brandt have never paid any compensation to the plaintiff for his services in negotiating and procuring said loan, then the plaintiff is entitled to recover from the defendant such sum as the Court shall find to be reasonable compensation for his said services, not exceeding two and a-half per cent. upon the amount of said loan of $70,000, with interest in the discretion of the Court.

In the case of *Grape Sug. and Vin. Co.* v. *Small,* 40 Md. 395, a somewhat analogous case, this Court said: If the company, after its incorporation was complete, accepted the work done under the contract, it will be estopped, both in law and in equity from denying its liability, on account of the same. In other words, the appellant will not be permitted to accept the work done and materials furnished by the plaintiff under a contract made prior to the recording of the certificate and at the same time deny its liability under it.

In *Preston* v. *Liverpool &c. Railroad Co.,* 7 Eng. Law and Equity, 124, the Chancellor held, that where projectors of a company enter into contracts on behalf of a body not existing at the time of the contract, but to be called into existence afterwards, then, if the body for whom the projectors assumed to act, does come into existence, it cannot take the benefit of the contract without performing that part of it which the projectors undertook that it should perform, that is, the projectors are treated, for that purpose, as agents of the company so afterwards called into existence.

Mr. Alger, in his work on *Promoters, and the Promotion of Corporations,* p. 210 and 224, in treating of the liability of corporations for these contracts says: "When, however, the contract is made in the name or in behalf of the projected corporation, or is treated as a proposal to such corporation, then in the absence of other controlling circumstances, acceptance of benefits under the contract justifies the inference that the corporation has accepted or adopted it.".

"If the corporation has power to pay for the service and

expenses necessary to bring it into existence, and has actually taken the benefit of such service and expenditures by entering upon the corporate enterprise, and if, as a fact, the work was not done or the expense incurred gratuitously or upon the credit of a third party, but with the expectation that the corporation when formed would make payment, it would seem that the corporation ought in equity to be holden for payment to a fair and reasonable amount."

In *Little Rock and Fort Smith Railway Co.* v. *Perry*, 37 Ark. 191, the Court thus announces the law. From all the authorities, it seems clear that, in order to recover, in an action at law, the plaintiff must show either an express promise of the new company, or, that the contract was made with persons then engaged in its formation, and taking preliminary steps thereto, and that the contract was made on behalf of the new company, in the expectation on the part of the plaintiff, and with the assurance on the part of the projectors, that it would become a corporate debt, and that the company afterwards entered upon and enjoyed the benefit of the contract, and by no other title than that derived through it.

And JUDGE PAXSON in delivering the opinion of the Court in *Bells Gap Railroad Co.* v. *Christy*, 79 Pa. St. 59, says, that the principle is well established in England, and to some extent recognized in this country, that when the projectors of a company enter into contracts in behalf of a body not existing at the time but to be called into existence afterwards then if the body for which the projectors assumed to act does come into existence, it cannot take the benefit of the contract without performing that part of it which the projectors undertook that it should perform. And if such acts are necessary to the organization and its objects and are subsequently accepted by the company and the benefits thereof enjoyed by them, they must take such benefits *cum onere* and make compensation therefor.

We think the plaintff's prayer in view of the principles here announced was free from error, and correctly stated the law applicable to the facts of the case.

The facts of the case are sufficient to furnish evidence from which the Court, sitting as a jury could find that the negotiation of the loan by the appellee was necessary to the organization of the corporation and its objects, that the money was accepted, and the benefits thereof enjoyed by it. The prayer left to the Court sitting as a jury, to find the facts, set out in the record, essential to a recovery and as we find no error in the rulings of the Court, upon the prayers, the judgment will be affirmed.

Entertaining this view of the case, we find it unnecessary to discuss the defendant's prayers, as the whole law of the case was properly and correctly submitted by the plaintiff's prayer.

*Judgment  ffirmed with costs.*