In re COLLINS.

(District Court, E. D. Louisiana. July 6, 1914. On Application for New Trial, July 28, 1916.)

No. 1661.

1. BANKRUPTCY ⊜⟞226—DECISION BY REFEREE—CONCLUSIVENESS—MATTERS CONCLUDED.

Where other creditors were not parties to a petition by a trustee for leave to transfer a portion of the bankrupt's property pursuant to contract made before bankruptcy, such creditors, though they did not appeal from the decision of the referee wherein he found that one objecting to the

order had a lien on the property, are not bound, and may subsequently question the objector's interest.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞226.]

2. BANKRUPTCY ☞342—CLAIMS—MOTION TO EXPUNGE.

Under Bankr. Act July 1, 1898, c. 541, § 57k, 30 Stat. 560 (Comp. St. 1913, § 9641), General Order 21 (81 Fed. ix, 32 C. C. A. xxii), a claim which has been allowed may be reconsidered and rejected on the petition of a creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 529; Dec. Dig. ☞342.]

3. BANKRUPTCY ☞331—CLAIMS—PROOF OF CLAIM BY AGENT.

A claim will be disallowed where proof is made by an agent as principal without disclosing the agency, for it is false.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 520; Dec. Dig. ☞331.]

4. MECHANICS' LIENS ☞295—RIGHT OF LIENHOLDER—MORTGAGES.

Under Civ. Code La. §§ 3267, 3268, relating to mechanics' liens, laborers and materialmen who have furnished labor and materials for the erection of a building on mortgaged property may enforce their liens by having the land and improvements separately appraised and sold.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 619; Dec. Dig. ☞295.]

5. VENDOR AND PURCHASER ☞266(1)—VENDOR'S LIEN—ESTOPPEL TO ASSERT.

One holding a vendor's lien on land agreed to lend the owner, who was erecting buildings thereon, a sum of money, provided the owner would have a surety company execute a builder's bond for the value of the buildings. To obtain the surety bond, title in the property was transferred to a third person; the act of sale being executed before the lender, who was a notary public. The sale purported to be for $7,500, $900 cash and the balance in three notes of $2,200 each. The lender subsequently liquidated, and in his notarial capacity canceled his note secured by a vendor's lien on the property. *Held* that, as against the materialmen and laborers furnishing the material and labor for the building, the lender could not assert the validity of the vendor's lien notes given on the simulated sale, for, if it had not been executed, the laborers and materialmen might under Civ. Code La. §§ 3267, 3268, have compelled a separate appraisal of the land and improvements and sale of the same to satisfy their claims.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 713, 715, 719, 722–732; Dec. Dig. ☞266(1).]

6. NOTARIES ☞9—RIGHTS OF—RECORDS.

In such case, as a notary is a high official whose records import verity, it is against public policy that the notary should profit by falsifying his record so as to show a simulated sale.

[Ed. Note.—For other cases, see Notaries, Dec. Dig. ☞9.]

7. VENDOR AND PURCHASER ☞256—VENDOR'S LIEN—RECORDATION.

Under Civ. Code La. § 3271, registration is necessary to the validity of a vendor's lien, as against the creditors of the owner, and, where the lien is canceled, it is not good against such creditors.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. ☞256.]

8. BANKRUPTCY ☞192—TRUSTEE—RIGHTS OF—INSTRUMENTS REQUIRED TO BE RECORDED.

Under Bankr. Act July 1, 1898, c. 541, § 47a, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), declaring that the trustee shall be deemed vested with all the rights, remedies, and powers of a judgment debtor holding an execution return-

ed unsatisfied, the title of the trustee is not restricted to the title of the bankrupt, and hence those holding a vendor's lien on property of the bankrupt, which was not registered as required by Civ. Code La. § 3271, take no priority over general creditors of the bankrupt; the title to the property having passed to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 294; Dec. Dig. ⊂⊃192.]

9. VENDOR AND PURCHASER ⊂⊃261(4)—VENDOR'S LIEN—SALE OF VENDOR'S LIEN NOTES.

A notary public having a vendor's lien on land agreed to make a further loan to the owner, who was erecting buildings thereon. To obtain a builder's surety bond, the owner made a simulated conveyance of the property; the act of sale being acknowledged before the notary who was making the loan. Purported vendor's lien notes were received by the notary, who disposed of them to an innocent purchaser. *Held* that, the vendor's lien not being perfected by proper registration, the holder of the notes was entitled, first, to enforce the claim against the proceeds of the notes in the hands of the notary, and then to assert any remaining claim against the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 680, 690; Dec. Dig. ⊂⊃261(4).]

## On Application for New Trial.

10. BANKRUPTCY ⊂⊃331—CLAIMS—PROOF OF CLAIMS.

While the statutes allow proof of claim to be made by an agent, it is not contemplated that proof of claim can be made by an agent when the principal is present and able to file his own proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 520; Dec. Dig. ⊂⊃331.]

11. ESTOPPEL ⊂⊃74(2)—EQUITABLE ESTOPPEL—RIGHT TO ASSERT.

A notary who had a vendor's lien on land required the purchaser, before he made a further loan, to acknowledge a simulated sale so that a builder's bond could be procured. Laborers and materialmen served and recorded their claims on the record owner within 45 days after the work was finished. *Held* that, as they in that manner secured a lien if the claims were served on the record owner, the notary and owner are estopped from denying that the sale was bona fide for the purpose of defeating the liens.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 190, 191; Dec. Dig. ⊂⊃74(2).]

12. BANKRUPTCY ⊂⊃339—CLAIMS—EXPUNGING CLAIMS.

A creditor cannot object to the allowance of claims of other creditors, where he did not move to expunge them and took no exception to the decision of the referee allowing them.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 526; Dec. Dig. ⊂⊃339.]

13. SUBROGATION ⊂⊃7(1)—PRINCIPAL AND SURETY.

Where a surety on a builder's bond paid claims of laborers and materialmen who had liens, it is subrogated to the liens of such persons.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 92; Dec. Dig. ⊂⊃7(1).]

14. PRINCIPAL AND AGENT ⊂⊃137(1)—AUTHORITY OF AGENT—FRAUD.

An agent of a surety company is not an agent for the purpose of perpetrating a fraud on the company, and the company is not estopped from denying, as against persons who were parties to the fraud, that the agent's participation therein was without the scope of his authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 492, 494; Dec. Dig. ⊂⊃137(1).]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of the bankruptcy of John Dillard Collins. Accounting by A. G. Gugel, trustee, in which the claim of Isabel Danziger was allowed. Proceeding to review order of the referee sustaining the accounting, and opposition of Isabel Danziger asking attorney's fees. Reversed and remanded.

On May 16, 1912, John D. Collins, a builder, was adjudicated a bankrupt on his voluntary petition. He surrendered as part of his assets certain real estate in New Orleans standing in the name of Isidore Singer against which was registered two acts of sale to Isidore Singer with mortgages and vendor's liens in favor of Collins for $2,600 and $6,600 registered, respectively, February 9 and February 26, 1912; an agreement to sell part of the property to W. A. Yochim registered May 11, 1912; and various liens of materialmen registered on divers dates, none earlier than April 1, 1912.

On July 5, 1912, the trustee, A. G. Gugel, petitioned for leave to transfer part of the property to Yochim in conformity with the agreement. To this Miss Isabel Danziger objected, claiming to be the holder and owner of the vendor's lien mortgage notes of the Singer transaction, and later, on January 24, 1913, she filed a proof of debt in the usual form by affidavit before A. D. Danziger, notary. Singer offered no objection, and on June 20, 1912, he executed a notarial act before Danziger disclaiming ownership of the property and declaring it was placed in his name for convenience only.

The trustee's petition lay in abeyance until August 2, 1913, when Yochim filed an intervention asking to have the agreement carried out. There was then a hearing before the Honorable Wm. A. Bell, referee, at which all parties in interest, including the lien creditors, appeared. The referee denied Yochim relief, but on appeal this ruling was reversed, and the trustee was directed to make title to Yochim on his complying with the agreement. This Yochim failed to do, and the property was then sold at auction free of all liens and incumbrances which were refereed to the proceeds.

In due time the trustee filed an account on which he placed Miss Danziger as holder of the said mortgage notes to be paid in full with interest and placed the various lien creditors as inferior in rank and to be paid 50.6 per cent. of their claims.

Various lien creditors opposed the account, especially the allowance of the Danziger claim, on the grounds that the sale and mortgage was a simulation and without consideration, and that even if valid it was subordinate to the liens for material. Miss Danziger opposed the account, asking for 10 per cent. attorney's fees in addition to the amount allowed.

The referee sustained the opposition of Miss Danziger, and overruled all other oppositions. The lien creditors have brought the matter up for review of the referee's order.

Yochim also opposed the account, but has not appealed. His claim is only material because considerable of the testimony now before me was taken on the trial of his intervention.

Saunders & Morphy, of New Orleans, La., for bankrupt.

Grant & Grant and Dart, Kernan & Dart, all of New Orleans, La., for William Kernan Dart and others.

Alfred D. Danziger and Howe, Fenner, Spencer, & Cocke, all of New Orleans, La., for Felix J. Dreyfous.

FOSTER, District Judge (after stating the facts as above). There is little or no dispute as to the material facts in this case, though it has been somewhat difficult to extract them from the voluminous transcript owing to the acrimony of the trial before the referee, the many objections repeatedly dictated into the record by counsel for all parties, and the failure of the stenographer to index the testimony as required by rule 20 of this court.

[1, 2] The referee in passing on the oppositions held that all questions as to the validity of the mortgage were closed by his former ruling on the petition of Yochim, and that no creditor had petitioned

to have Miss Danziger's claim expunged. In both of these assumptions he is in error. If the judgment on the Yochim petition is res judicata as to anybody, it is not as to the lien creditors now opposing the account, as they were not parties to the proceeding; in fact, were expressly excluded by the referee. A claim which has been allowed may be reconsidered and rejected on the petition of a creditor. Bankr. Act, § 57k, General Order 21 (89 Fed. ix, 32 C. C. A. xxii).

The procedure adopted in the instant case is usual in the settlement of estates in Louisiana in succession, receivership, and bankruptcy matters, and has all the elements necessary to comply with the law. The pleadings are filed in full, and the creditor whose claim was attacked evidently had ample notice and his day in court.

[3-5] The fight centered on what is known as the Belmont Place property. The facts regarding it are as follows: Collins bought the real estate from Elias Pailet on February 9, 1912, by act before Felix J. Dreyfous, notary, for $3,100, paying $400 cash and giving his note secured by vendor's lien and mortgage for $2,700. He immediately proceeded to build several houses on the lots, and, when they were practically completed, he applied to Dreyfous for a loan to pay his debts growing out of their erection. Dreyfous visited the property, observed their state of completion, and agreed to lend Collins—how much is not definitely shown. He exacted that Collins have a surety company execute a builder's bond provided for by the Louisiana statute for the full value of the buildings, $6,600.

The agent of the surety company, Mr. Ross, was called in and agreed to write the bond if Collins would transfer the property to some one else, as he did not think he could write a bond for a man who was both owner and builder. Ross testifies that he was not told and did not know that the buildings had been started at that time.

An act of sale was executed before Dreyfous from Collins to Singer purporting to be a sale for $7,500; $900 cash and the balance represented by three notes each for $2,200 secured by mortgage and vendor's lien.

This act was purely a simulation. No cash was paid, and it was not intended to transfer the title. Ross testifies he did not know it was a simulation. The bond transaction is not material, except that there is testimony to the effect that the only reason for the sale was to secure the bond. Dreyfous took the three notes. He testifies he retained one and sold two to a client, a Mrs. Tujaque, and credited Collins' account with the proceeds. He liquidated, and in his notarial capacity canceled, the $2,700 vendor's lien note which he held for his own account and paid out $625 in cash, including the premium on the builder's bond. The balance of the proceeds he still has in his possession, and it is credited on the proof of claim filed by Miss Danziger.

It is evident that the transaction was entirely for Dreyfous' personal account, and Miss Danziger, who was his clerk, is absolutely without interest in the notes. Her proof of debt is not in the form required as agent, and in making it her agency is not disclosed.

Technically, it is false and should be expunged and disallowed.

On the merits, her principal is in no better position. The sale was a simulation. As there was no sale, there was no vendor's lien, and the mortgage was not granted by the owner of the property. It is true there are Louisiana cases holding that, under similar conditions, the notes in the hands of innocent third persons are to be considered as mortgage notes issued by the owner and enforceable as such against the property; but Dreyfous is not an innocent third person. He had full knowledge of the viciousness of the purported sale, and in fact counseled and executed the transaction for his own benefit. He was the holder of a vendor's lien on the ground. However, as to the buildings subsequently erected, the liens of the materialmen were superior without being recorded and might have been enforced co-equally with the vendor's lien by having the property separately appraised and sold. C. C. 3267, 3268; Johnson v. Weinstock, 31 La. Ann. 698; City of Baltimore v. Parlange, 23 La. Ann. 365. By executing the subsequent simulated sale and mortgage he practically prevented this being done. Conceding that knowledge is not equivalent to registry in Louisiana and that prima facie the purported sale and mortgage would prime the material liens, then unrecorded, still Dreyfous knew the liens existed, and as against the materialmen he would be ,estopped to claim a preference for his. pre-existing debt of $2,700.

[6] But the principle to be considered is more important and goes further. Notaries in Louisiana are high officials and granted extraordinary powers and authority. Their records import verity, and it is against public policy that a notary should profit to the injury of others by his willful falsification.

[7, 8] Though there are no such claims on file, I am not unmindful of the suggestion in the record that Dreyfous held a valid vendor's lien note of $2,700, and that two of the notes in controversy are now held by an innocent third person. If this is so, as to the first proposition, registration was necessary to the validity of the lien. C. C. 3271. Dreyfous canceled this registration before bankruptcy, and the title of the trustee has now intervened. It was clearly the intention of Congress in adopting the amendment of 1910 to paragraph 47, cl. A, of the Bankruptcy Act, that thereafter the trustee should not stand in the shoes of the bankrupt with regard to unrecorded liens depending for their validity upon registration, and that, as to the general creditors, such liens should be void.

[9] With regard to the second proposition, Dreyfous still has in his possession a part of the proceeds of the notes. If the two notes are held by innocent third persons, their claims should first be enforced against this fund to its extent and against the proceeds of the property as mortgage creditors for the balance.

With regard to the real estate known as the Louisiana avenue property against which Miss Danziger claims a vendor's lien and mortgage of $2,600 by virtue of the simulated sale of February 9, 1912, but which is also the property of Dreyfous, it is not shown that any consideration whatever was paid, and the same principle applies to it as to the nullity of the act.

The judgment of the referee will be reversed, and the claims of Miss

Isabel Danziger expunged and rejected, reserving to Felix J. Dreyfous the right to prove his claim against the estate as an ordinary creditor within 10 days.

The rights of the trustee to recover of Felix J. Dreyfous the balance of the proceeds of said notes to satisfy the claims of innocent third holders of same is also reserved.

Reversed and remanded for such further proceedings as may be necessary, and in conformity to this opinion.

## On Application for New Trial.

An application for a new trial has been filed in this case by Mr. Dreyfous and Mrs. Miller, née Danziger, and all questions extensively reargued.

[10] On their behalf it is contended that Miss Danziger, as the holder of the notes, was entitled to file the claim in her own name, and, if the proof filed is not in correct form, she should be allowed to amend and file proof as agent of Dreyfous and Mrs. Tujaque. The "holder" of a promissory note is one who has a legal interest in it. A mere dummy cannot be considered the holder of a note for the purpose of proving it in bankruptcy. Besides, the proof sets up ownership. For obvious reasons, well illustrated by this case, it is essential that a proof of debt in bankruptcy show on its face the true interest of the person presenting it. The Supreme Court has prescribed the form to be used by an agent, and it provides for a disclosure of the principal. The opinion heretofore rendered recognizes the rights of Dreyfous and Mrs. Tujaque to prove up their claims. However, it is not contemplated by the rules that debts be proved by an agent when the principal is present and able to file his own proof.

It is also contended that, while the transaction between Dreyfous and Collins was not a sale, it was intended to secure Dreyfous and should be considered a mortgage, good as to third persons. In support of this, the following cases are cited: Parmer v. Mangham, 31 La. Ann. 348; Wang & Cottam v. Finnerty, 32 La. Ann. 94; Nuss v. Nuss, 112 La. 265, 36 South. 345. These cases are not in point. The first-named case tends to support my previous ruling. A debtor was fraudulently trying to deprive his creditor of the security he had given him, and the court condemned the attempt in strong language. See page 354 of 31 La. Ann. In the second case, there was a sale with a counter letter. The debtor was in possession of the property under the recorded deed. The judgment sought to be enforced against the property was rendered long after the transaction between the parties. The last case was a transaction between husband and wife and other relatives. No rights of prior creditors were involved.

[11] Since the rendition of the decree herein, the Supreme Court of Louisiana, in the case of Brown v. Staples, 138 La. 602, 70 South. 529, has decided that where the contract is for more than $1,000 and, together with the bond, is recorded within the time fixed by Act 134 of 1906—say seven days—the lien of the materialmen is not governed by article 3274, C. C., and their liens will prime a pre-existing mortgage if attested accounts are served on the owner and recorded within

45 days after the work is finished. The claims of the materialmen herein were so served and recorded. As to this, it is contended the materials were furnished to the owner, and not the contractor, and that the said decision has no application. This argument overlooks the fact that Dreyfous and the bankrupt created the situation for their own benefit, and they are estopped to deny it to the prejudice of the materialmen.

[12-14] While the objections are not formally presented by the pleadings, it is urged there should be no decree in favor of the materialmen, as some of the claims are not proven; that some have been paid by the surety company; and that one creditor has agreed not to oppose Dreyfous' priority. The claims were all allowed by the referee both on filing and in his ruling denying them priority. No exceptions have been taken and no attempt has been made to expunge any of them. If the surety company has paid any of the lienholders, it is subrogated to their rights. It is suggested that the surety company would be estopped by the knowledge of its agent regarding the simulated sale. Mr. Ross, the agent, testifies that he did not know the sale was simulated or that construction of the houses had been started. He is not impeached or discredited, and it is so improbable that he would have written the bond had he known the true conditions, his evidence is entitled to great weight. But, in any event, he was not the agent of the surety company for the purpose of perpetrating a fraud upon it, and the company would not be estopped as against Collins and Dreyfous by any action of Ross without the scope of his authority. Miss Danziger also claimed to be the agent of the surety company. If so, it is unnecessary to discuss her power to bind it in this transaction. In this proceeding the court is not concerned with agreements between the creditors postponing the one debt to the other.

There seems to be some doubt as to the correctness of the judgment denying Miss Danziger a lien on what is called the Louisiana avenue property. This transaction was clearly a simulation, but it is contended the matter has been settled and no one is objecting. Proof of settlement does not appear in the record; but, if the facts are as stated in the argument, the decree may be amended.

On the whole, I see no reason to change my views heretofore expressed. The application for a new trial will be denied. The parties may submit an amended decree in conformity with this and the original opinion.