## In re NEW YORK & BALTIMORE INLAND TRANSP. CO.

(District Court, D. Delaware.   October 8, 1921.)

### No. 356.

1. **Corporations �köö477(2)—Resolution held to authorize mortgage.**
   Where a corporation was organized to carry out the terms of an agreement to acquire certain tugs and barges to be paid for by an issue of stock and an issue of bonds, a resolution of the directors, providing for such acquisition and for an issue of bonds, was to be read in the light of the agreement, and thereby understood to provide for a "first mortgage" bond issue.

2. **Corporations ⊦ɔ432(4)—Presumed seal was affixed by authorized person.**
   In the absence of evidence that the corporate seal affixed to the corporation's mortgage was affixed by an unauthorized person, it is presumed to have been affixed by an authorized officer or agent.

3. **Pledges ⊦ɔ25—Lien dependent on possession.**
   The lien of a pledgee continues only so long as he retains possession of the pledged property.

4. **Liens ⊦ɔ7—Equitable lien created by acquisition of property under agreement to give mortgage therefor.**
   Where a corporation acquired tugs and barges under an agreement to give a mortgage thereon, the promisee acquired an equitable lien on such property.

5. **Bankruptcy ⊦ɔ161(2), 188(3)—Trustee vested with title freed from liens enforceable only against bankrupt; prior equitable lien not a "transfer"; "present consideration."**
   By the 1910 amendment to Bankruptcy Act, § 47a (2), being Comp. St. § 9631, the trustee is vested with title to the bankrupt estate freed from all liens that were enforceable only as against the bankrupt, which includes equitable liens: hence an equitable lien created by an agreement to mortgage, made more than four months before bankruptcy, is not such a "transfer," under section 60b (section 9644), as to validate a mortgage within the four months period, otherwise voidable as a preference, nor was such mortgage one for a "present consideration," under section 67d (section 9651); the title to the property having passed when it was delivered some four months prior to the mortgage, and the fact that the mortgage purported to be a purchase-money mortgage not being controlling.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transfer; Second Series, Present Consideration.]

In Bankruptcy. In the matter of the New York & Baltimore Inland Transportation Company, bankrupt. On petition for review of order of referee holding the bankrupt's mortgage invalid. Order affirmed.

Caleb S. Layton, of Wilmington, Del., for trustee.

Thomas F. Bayard, of Wilmington, Del., W. Thomas Kemp, of Baltimore, Md., and Frank A. Sweezy, of New York City, for claimant.

⊦ɔFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
276 F.—10

MORRIS, District Judge. Thomas H. Hayes having filed his proof of claim against New York & Baltimore Inland Transportation Company, a Delaware corporation, bankrupt, for $100,000, secured, as therein alleged, by a mortgage made within four months before the filing of the petition in bankruptcy, pursuant to an agreement antedating that period, upon assets in the custody of the trustee, the latter by exceptions challenged the validity of the mortgage. The referee, after hearing, held the mortgage invalid, both at law and as effecting a voidable preference under section 60b of the Bankruptcy Act (Comp. St. § 9644). The matter is here upon a petition for review.

The voluntary petition in bankruptcy of the Delaware corporation was filed in this court September 14, 1920. The mortgage from that corporation to Hayes, covering four tugs and nine barges, was made on August 23, and recorded on September 3, 1920. The agreement between Hayes and the New York & Baltimore Inland Transportation Company, a Maryland corporation, then the owner of the tugs and barges, was made on November 13, 1919. By that agreement Hayes undertook to advance to the Maryland corporation the sum of $73,000 with which to pay the debts and liens existing against it and its property, and that company agreed to liquidate and dissolve under the jurisdiction of a court of equity of Baltimore city, and further agreed to transfer and assign to Hayes all its property—

"upon delivery to it of $90,000 of the preferred stock and $25,000 of the common stock of a new company to be formed by said Hayes under the laws of Delaware, after said new company shall have first become the owner of said property, and the capital of which company shall be $100,000 7 per cent. cumulative preferred stock and $200,000 common stock, and against the property of which company there shall have been issue [issued] a $100,000 first mortgage 7 per cent. bond issue."

Hayes paid the sum of $73,000 to the Maryland corporation, and in March, 1920, caused the Delaware corporation provided for in the agreement, the bankrupt, to be organized. The Maryland company was dissolved, as it had agreed to be, and a receiver of its property and assets was appointed. On March 19, 1920, the receiver presented to the court of his appointment a petition, referring to the agreement with Hayes and setting forth the payment by Hayes of all the liens and claims against the tugs and barges of the Maryland corporation, "that the said Thomas H. Hayes is now ready to consummate his said agreement, and to issue said $90,000 preferred stock and $25,000 common stock upon delivery to him of bills of sale for said tugs and barges, and the transfer to him of all other property of the said corporation, * * *" and praying for an order authorizing the receiver to execute and deliver to Hayes, or his nominee, bills of sale for the tugs and barges, and to transfer and deliver to him all other property of the corporation, upon delivery by Hayes to him of $90,000 of the preferred stock and $25,000 of the common stock of the Delaware corporation; "said corporation having [first] acquired, however, as a basis for the issuing of said stock, the property aforesaid." An order in conformity with the prayer of the petition was entered.

Upon the day following the entry of that order, namely, on March 20, 1920, a special meeting of the board of directors of the Delaware

corporation was held, at which Hayes was elected its president and the following resolution was adopted:

"Resolved, that this corporation, the New York & Baltimore Inland Transportation Co., purchase from The New York & Baltimore Inland Transportation Company, a corporation * * * of the state of Maryland, through Ernest W. Beatty, receiver for said company, appointed by the circuit court of Baltimore city, the tugs Pennsylania, Elfrida, Merrill, and Virginia, and barges No. 1 to No. 9 (both inclusive), * * * and all other property used by said company in the transportation business lately conducted by it between New York and Baltimore; all of said property being subject to liens thereon in favor of Thomas H. Hayes, * * * said liens aggregating the sum of one hundred thousand ($100,000) dollars.

"Resolved, further, that this corporation issue to said Ernest W. Beatty, receiver as aforesaid, in exchange and full payment for the said property of the New York & Baltimore Inland Transportation Company, subject to the liens aforesaid, nine hundred (900) shares of the preferred stock of this company, of the total par value of $90,000, and twenty-five hundred shares of the common stock of this company, of the total par value of $25,000.

"Resolved, further, that this corporation issue its ———— year 7 per cent. gold bonds (in form to be approved by the corporation's attorney) in the amount of $100,000, and that this corporation deliver said bonds to the said Thomas H. Hayes in full satisfaction of his aforesaid liens against the said property."

The evidence does not directly and expressly disclose the date upon which the capital stock called for by the resolution was issued, but I think a proper inference is that it was issued promptly and without delay. The record expressly discloses that barge No. 9 was delivered to the Delaware corporation by the receiver on April 9, 1920, and I think the evidence warrants the inference that the tugs and other barges were delivered to that corporation on or about March 20, 1920. Bills of sale for the four tugs and the barges Nos. 1 to 8 were executed on March 20, and for barge No. 9 on August 23, 1920. All the bills of sale were received by the Delaware corporation on August 23d, and on that day the Delaware corporation made to Hayes its four promissory notes, for $25,000 each, and its mortgage, for $100,000, covering the four tugs and the nine barges. The mortgage purports to be, as therein stated, "for the purchase money of said thirteen vessels," and "for the purpose of securing the payment of said purchase-money debt." The bills of sale and the mortgage were recorded in the office of the collector of customs at Baltimore on September 3, 1920, that being the place at which the tugs and barges were registered and enrolled. Upon the Delaware corporation being adjudged a bankrupt, the tugs and barges came into the custody of this court. Thereafter they were all sold under maritime liens, and the remnants and surplus arising therefrom, impressed with the lien of Hayes, if any, paid to the trustee.

[1, 2] The trustee first urges that the mortgage is invalid, even as against the bankrupt itself, without regard to the provisions of the Bankruptcy Act, in that, as is contended, the execution and delivery of the mortgage was not authorized by the board of directors of the mortgagor, because the mortgage was executed by the mortgagor's vice president, who was a brother of the mortgagee, and because the corporate seal of the mortgagor, affixed to the mortgage, was not attested by the secretary of the company. I think the execution of the mort-

gage was authorized by the board of directors. The agreement of November 13, 1919, provided for a "first mortgage bond issue." The Delaware corporation, mortgagor, was organized pursuant to and for the purpose of carrying out the terms of that agreement. The day after the receiver obtained authority to complete on his part the performance of the contract the Delaware corporation, with full knowledge of the contract of November 13, 1919, adopted the resolution of March 20, 1920, providing for the acquisition by it of the tugs and barges pursuant to the terms of that agreement, and also providing for an issue of bonds in form to be approved by the corporation's attorney in the amount of $100,000 and delivery thereof to Hayes. Under these circumstances the resolution must be read in the light of the agreement, and when so read it must, I think, be understood to provide for a "first mortgage" bond issue.

Whether the mortgage should be made direct to Hayes or to a trustee pertained more to form than to substance, and consequently, under the express terms of the resolution, was to that extent within the control of the corporation's attorney. The fact that the officer executing the mortgage in the name of the corporation was a brother of the mortgagee, if entitled to any weight, as showing the mortgage was given in fraud of the corporation, becomes of no importance after a finding that the execution and delivery of the mortgage was authorized by the board of directors. It is not disputed that the seal affixed to the mortgage is the seal of the mortgagor. Nor is there any evidence showing or tending to show that it was affixed by an unauthorized person. In the absence of such evidence the presumption that it was affixed by an authorized officer or agent (Fletcher's Cyc. Corp. § 757) must prevail. The mortgage bears the signatures of two witnesses to the execution, neither of whom was the secretary, and the seal was not attested by the secretary. But, the mortgage having been duly authorized by the corporation and the seal having been regularly affixed thereto, I shall, for the purposes of this case, assume, without deciding, the sufficiency of the execution.

The trustee next urges that the mortgage, even though otherwise valid, is voidable as a preference under section 60b of the Bankruptcy Act. The trustee has sustained this contention by establishing all the elements of a voidable preference, unless a mortgage which otherwise constitutes a voidable preference is deprived of that character by the fact that it was made pursuant to a contract providing therefor, entered into more than four months before the filing of the petition. I think the evidence supporting this finding is so clear that a review thereof is unnecessary.

The crucial question, therefore, is whether the agreement saves the mortgage. This depends, as I see it, upon what was "the time of the transfer" to Hayes of the mortgaged property. If the transfer occurred at the date of the agreement, or at the time of the advancement by Hayes of the money provided for therein, the time of the transfer falls without the period of voidability fixed by the bankruptcy act. If, however, there was no transfer, within the meaning of that statute, until the delivery of the mortgage, the other elements of a voidable pref-

erence having been found, the mortgage must be adjudgd invalid. It is manifest that, if the antecedent agreement is of such a character as to be wholly inoperative as a transfer of the property to which it relates, there is nothing upon which a ruling that the transfer occurred at the date of the agreement may be predicated. Consequently it becomes necessary, in pursuing the main inquiry, to consider whether the agreement, coupled with the advancement by Hayes of the moneys therein provided for, was sufficient to establish a lien or assignment valid in law or in equity, and, if it was, whether such lien or assignment is, under the circumstances here present, recognized by the Bankruptcy Act. The contract expressly provides that—

"Beginning as of November 1, 1919, and pending liquidation aforesaid, said Hayes may operate said nine barges and four tug boats, * * * accounting therefor to the company to be formed by him."

[3] It has hereinbefore been found that Hayes advanced the sum of $73,000 to the Maryland corporation, and the evidence justifies the inference that the delivery of the tugs and barges to Hayes as contemplated by the contract was made. It is clear, therefore, that Hayes in the first instance became a pledgee having a common-law lien. But Hayes surrendered the possession of the pledged property to the Delaware corporation in March, or at least not later than April 9th, and it is a well-settled principle of law that the lien of a pledgee continues only so long as he retains possession of the pledged property.

[4] The agreement of November 13th, however, provided for a $100,000 first mortgage bond issue against the property of the Delaware corporation. The Delaware corporation acquired the tugs and barges under the terms of that agreement, and by resolution of March 20, 1920, provided for such bond issue. What rights, if any, did such acquisition of the tugs and barges confer upon Hayes? Pomeroy's Equity Jurisprudence (4th Ed.) § 1235, says:

" * * * That every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice."

[5] That statement of the doctrine was approved by the Supreme Court in Walker v. Brown, 165 U. S. 654, 664, 17 Sup. Ct. 453, 41 L. Ed. 865. Though not free from doubt, I am inclined to think that the application of that rule to the facts of this case requires a finding that Hayes acquired an equitable lien upon the tugs and barges at the time or times they passed into the possession of the Delaware corporation. Does such a lien constitute a "transfer," within the meaning of section 60b of the Bankruptcy Act? Standing alone, it apparently would not. True, it was held in Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577—

"The trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt."

This doctrine was reaffirmed in York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. For the very purpose, however, of avoiding that construction of the Bankruptcy Act, the amendment of 1910 to section 47a (2), being Comp. St. § 9631, was enacted. Loveland on Bankruptcy, 445; Collier on Bankruptcy (12th Ed.) p. 728. As was said in Re Kruse (D. C.) 234 Fed. 470, that amendment clothes—

"the trustee, as to all property in the custody of or coming into the custody of the bankruptcy court since that amendment, with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings upon such property so coming into the custody of the court of bankruptcy. Under this amendment, therefore, the trustee no longer stands simply in the shoes of the bankrupt; but as to all property acquired by the bankrupt since the amendment, and so coming into the custody of the court of bankruptcy, the trustee is entitled to all the rights of a creditor holding a lien by legal or equitable proceedings upon such property at the date of the bankruptcy, and the prior decisions, holding that he has no other rights than the bankrupt had at the time of the bankruptcy, are no longer controlling."

The trustee can no longer be said to have the limited title of the bankrupt. In re Gehris-Herbine Co. (D. C.) 188 Fed. 502; In re Hammond (D. C.) 188 Fed. 1020; In re Collins (D. C.) 235 Fed. 937; Potter Mfg. Co. v. Arthur, 220 Fed. 843, 846, 136 C. C. A. 589, Ann. Cas. 1916A, 1268 (C. C. A. 6); In re O'Brien (D. C.) 215 Fed. 129; In re Pittsburg-Big Muddy Coal Co., 215 Fed. 703, 132 C. C. A. 81 (C. C. A. 7). The effect of the amendment as thus interpreted seems necessarily to be to vest the trustee with title to the bankrupt estate freed from all liens that were enforceable only as against the bankrupt. Consequently, an equitable lien, which is without effect as against incumbrancers of the property without notice (Pom. Eq. Jur. § 1235), would seem to be as unknown to the bankruptcy law as amended as it is to the common law.

If this view be correct, such a lien is a nullity as against the trustee, and is not a "transfer" within the meaning of section 60, which deals, not with nullities, but with transfers that, save for that section, would be valid and binding as against the trustee. The courts have many times, both before and since the amendment, considered whether an agreement antedating the four months period and of the character to create an equitable lien is sufficient to validate an ensuing mortgage, otherwise invalid as constituting a voidable preference. Judge McPherson, sitting in the Eastern district of Pennsylvania, in Re Sheridan (D. C.) 98 Fed. 406, held that an agreement to pledge certain chattels, made more than four months prior to the filing of the petition, was ineffective to validate an otherwise voidable preferential transfer, where delivery of the goods was made during the four months period, and in so holding said that the pledgee's title to the goods attached, not at the date of the agreement, but at the date of the actual delivery. Judge Cross, sitting in the district of New Jersey, held, in Tilt v. Citizens' Trust Co. (D. C.) 191 Fed. 441, as stated by the syllabus:

"Transfers of property to a creditor by an insolvent within four months prior to its bankruptcy, which would otherwise constitute a voidable preference, are not deprived of that character by the fact that they were made pursuant to a prior agreement made more than four months before bankruptcy."

In reaching that conclusion the court adopted the reasoning of the Circuit Court of Appeals for the Eighth Circuit in Re Great Western Mfg. Co., 152 Fed. 123, 127, 81 C. C. A. 341. Upon appeal the Court of Appeals for this circuit affirmed the decree, for the reasons stated in the opinion of Judge Cross. Other similar cases are Grandison v. National Bank of Commerce, 231 Fed. 800, 145 C. C. A. 620 (C. C. A. 2), In re Mandel, 135 Fed. 1021, 68 C. C. A. 546 (C. C. A. 2), affirming (D. C.) 127 Fed. 863, Pollock v. Jones, 124 Fed. 163, 61 C. C. A. 555 (C. C. A. 4), Morgan v. First Nat. Bank, 145 Fed. 466, 76 C. C. A. 336 (C. C. A. 4), In re Great Western Mfg. Co., 152 Fed. 123, 81 C. C. A. 341, and Lathrop Bank v. Holland, 205 Fed. 143, 123 C. C. A. 375 (C. C. A. 8).

There are numerous other decisions upon this question, some of which, however, arrive at a contrary conclusion; but I shall not undertake to review them, for I am not only convinced of the soundness of the doctrine sustained by the Court of Appeals for this circuit in the Tilt Case, but that case is in any event controlling, unless it be found that the principle there enunciated has been subsequently modified or denied by that court or by the Supreme Court. I have found no case decided by the Circuit Court of Appeals that even by inference might be thought to modify the Tilt decision, unless it be Zehner v. Southern Surety Co. (C. C. A.) 272 Fed. 954. In that case, however, the court found the sale made before the period of voidability was a transfer valid at law. The matter of an equitable lien was not involved, and the Tilt Case was, in my opinion, left unmodified thereby.

Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, and Hurley v. Atchison, Topeka & Santa Fé Ry., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729, were all decided before Citizens' Trust Co. v. Tilt, 200 Fed. 410, 118 C. C. A. 562 (C. C. A. 3), and it may not be presumed that those or similar cases were not there considered. In Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995, the Supreme Court, when considering a like question, said, " * * * A general promise to give security in the future is not enough," and in referring to the arrangement between the creditor and the bankrupt added, "It purported not to promise, but to transfer." In Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. 339, it was found that neither the creditor nor the bankrupt knew that the latter was insolvent at the time of the supposed preference, or that there were any transfers with intent to defraud creditors, and also that the actual lien was acquired before any knowledge of insolvency. Those are distinguishing facts. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275, is in principle the same as Zehner v. Southern Surety Co., supra.

Johnson v. Root Mfg. Co., 241 U. S. 160, 36 Sup. Ct. 520, 60 L. Ed. 934, the only remaining decision of the Supreme Court necessary, as I see it, to be discussed, is more nearly in point, but in that case a specific fund was set aside in a third hand more than four months before the

filing of the bankruptcy petition to pay a certain class of claims. This was done "after conferences of all parties concerned." The essence of the decision seems to me to be expressed in the words:

"* * * That the fund being thus appropriated and set aside, it does not matter that the formal ascertainment of the specific beneficiary was made within four months of the bankruptcy proceedings."

In short, the "transfer" there under consideration was actually made before the beginning of the four months period. Hence I find that Citizens' Trust Co. v. Tilt, supra, stands unmodified, and that the "transfer" to Hayes occurred within four months before the filing of the petition.

It is further contended by Hayes that the mortgage was made "for a present consideration," and that by reason thereof the transfer, even if made within the period of voidability, did not effect a preference under section 60b of the act, and that section 67d of the statute (Comp. St. § 9651) expressly preserved the lien of the recorded mortgage. Was there a "present consideration" for the mortgage? As I see it this involves two questions: First, whether an equitable lien is such consideration. From what has been hereinbefore said, this must be answered in the negative. The mortgage, and not the prior transactions, diminished the bankrupt estate. Second, when did Hayes become a creditor of the Delaware corporation? It seems clear that he became such creditor at the time that corporation acquired the subject-matter of the agreement of November 13, 1919. Maryland Apartment House Co. v. Glenn, 108 Md. 377, 70 Atl. 216; Cook v. Sterling Electric Co., 150 Fed. 766, 80 C. C. A. 502; Fletcher on Corporations, vol. 1, § 152.

It has been hereinbefore found that delivery of the tugs and barges was made on or before April 9, 1920. Title thereto passed at the time of delivery, and not at the time of the delivery of the bills of sale. The Marion S. Harris, 85 Fed. 798, 29 C. C. A. 428 (C. C. A. 3). Consequently, the mortgage was not given for a present consideration, but operated as security for an antecedent debt. The fact that the mortgage purports to be a purchase-money mortgage is not controlling. Burnett v. Frederick, 263 Fed. 681 (C. C. A. 3).

I am of the opinion that the order of the referee should be affirmed.